[S.F. No. 23484. Dec. 6, 1976.]

ALICE ELIZABETH BOWLAND et al., Plaintiffs and Appellants, v.
THE MUNICIPAL COURT FOR THE SANTA CRUZ COUNTY
JUDICIAL DISTRICT OF SANTA CRUZ COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

480

## COUNSEL

Anne Flower Cumings, Cumings & Jordan and Mary V. O'Hare for Plaintiffs and Appellants.

Roger S. Hanson, Nancy L. Davis, Mary C. Dunlap, Joan Messing Graff, Wendy W. Williams, Alice Daniel, Joseph Remcho, Deborah Hinkel and Ellen Lake as Amici Curiae on behalf of Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Jamie Jacobs-May, Deputy Attorneys General, for Real Party in Interest and Respondent.

## OPINION

**RICHARDSON, J.**—Plaintiffs challenge the constitutionality of Business and Professions Code section 2141, which prohibits the unlicensed practice of the healing arts. (Unless otherwise indicated, all statutory references are to the Business and Professions Code.) They are charged with violations of section 2141 in that as unlicensed persons they have practiced or held themselves out as practicing midwifery. The plaintiffs, defendants in the criminal proceedings pending against them in the Municipal Court of Santa Cruz County Judicial District, interposed a demurrer to the second amended complaint which was overruled. As plaintiffs they then sought mandate in the Santa Cruz Superior Court, directing the municipal court to sustain their demurrer. After initially issuing its alternative writ, the superior court held a hearing and denied a peremptory writ. Further criminal proceedings in Santa Cruz Municipal Court have been stayed pending final disposition of the appeal.

The charging allegation of the People's complaint is that on or about October 25, 1973, to March 6, 1974, each plaintiff "did willfully and unlawfully hold herself out as practicing a system or mode of treating the sick or afflicted to wit: such practices as undertaking to assist and treat a woman in childbirth as authorized in Sections 2137 and 2140 of the Business and Professions Code, and treat for a physical condition of a

person, to wit: Terry Johnson, by such practices without having at the time of doing so a valid unrevoked certificate as provided in Chapter V, Division 2 of the Business and Professions Code."

We consider the two applicable statutes, namely sections 2140 and 2141. Section 2140 recites: "The certificate to practice midwifery authorizes the holder to attend cases of normal childbirth. [¶] As used in this chapter, the practice of midwifery constitutes the furthering or undertaking by any person to assist a woman in normal childbirth. But it does not include the use of any instrument at any childbirth, except such instrument as is necessary in severing the umbilical cord, nor does it include the assisting of childbirth by any artificial, forcible, or mechanical means, nor the performance of any version, nor the removal of adherent placenta, nor the administering, prescribing, advising, or employing, either before or after any childbirth, of any drug, other than a disinfectant or cathartic. [¶] A midwife is not authorized to practice medicine and surgery by the provisions of this chapter."

Section 2141 provides in full: "Any person, who practices or attempts to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this state, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury or other mental or physical condition of any person, without having at the time of so doing a valid, unrevoked certificate as provided in this chapter, or without being authorized to perform such act pursuant to a certificate obtained in accordance with some other provision of law, is guilty of a misdemeanor."

It may be seen that the latter section appears to proscribe two types of medically related activities. It is unlawful, first, for an unlicensed person to practice or hold himself out as practicing any "system or mode of treating the sick or afflicted;" second, the prohibition extends to any actual diagnosis, treatment, surgery or prescription for a "mental or physical condition," whether or not such activities comprise a system or mode of treating the sick or afflicted. Initially, plaintiffs assert that the complaint is so worded as to charge only violations of the first statutory prohibition relating to "sickness or affliction." We conclude, however, that the complaint, reasonably read, charges also, as the People contend, that plaintiffs not only held themselves out as practicing a medical system, but engaged in the treatment of a particular physical condition as well, in violation of the second part of section 2141.

The purpose of a criminal pleading is to give to defendant fair and adequate notice of the nature of the offense charged. Although the language of the complaint in question is not a model of precision and clarity, it follows roughly the wording of section 2141. Penal Code section 952 provides that in an accusatory pleading, a statement that the accused has committed some public offense " 'may be in the words of the enactment describing the offense, . . .' " (See *Ratner* v. *Municipal Court* (1967) 256 Cal.App.2d 925, 929 [64 Cal.Rptr. 500].) In the light of the relative similarity in language between the pleading and statute, we conclude that the complaint's phrase, "treat for a physical condition," gave sufficient warning to plaintiffs that they were being charged under both proscriptions of section 2141. As will appear below, this conclusion also disposes of plaintiffs' contention that the complaint fails to allege with specificity the acts that constitute violations of section 2141.

The preliminary issues resolved, four central questions remain. (1) Does section 2141 prohibit the treatment of, or holding oneself out to treat and assist, a woman during childbirth? (2) Is the section unconstitutionally vague, failing to give adequate notice of the particular conduct it proscribes? (3) Is the section's prohibition overbroad, encompassing constitutionally protected conduct? (4) Does the section, construed to prohibit the assisting of a woman in normal childbirth, violate a woman's right to privacy?

We have concluded that although pregnancy is not a "sickness or affliction," it is a "physical condition" within the contemplation of section 2141. So construed, that section prohibits unlicensed persons from diagnosing, treating, operating upon or prescribing for a woman undergoing normal pregnancy or childbirth, and the reference in the complaint to those of plaintiffs' alleged practices which, under section 2140, are to be performed only by certificated midwives, gives adequate notice of the acts constituting the offense charged. We hold further that section 2141 is not unconstitutionally broad or vague, nor does it violate the prospective mother's right to privacy.

### 1. *Construction of Section 2141*

As we have seen, section 2141 prohibits practicing or holding oneself out to practice "any system or mode of treating the *sick or afflicted* in this state . . . ." (Italics added.) Plaintiffs are charged with violating this provision by undertaking to assist a woman in childbirth, thereby engaging in those acts and practices which, under sections 2137 and 2140,

are authorized when performed by persons holding medical or midwifery licenses. Section 2137 permits those with a valid certificate to practice surgery and other modes of medical treatment, while section 2140 authorizes those with a valid certificate to practice midwifery, defined as attendance upon *normal* childbirth without use of drugs or instruments.

■ Plaintiffs assert that a woman who is pregnant or undergoing childbirth is neither "sick" nor "afflicted," within the contemplation of the first part of section 2141. We agree that practices authorized by section 2140, which relate only to normal childbirth, cannot be deemed treatment of "the sick or afflicted." To the extent that the complaint in question charges only that plaintiffs' practice of midwifery constituted a violation of section 2141 as treatment of the "sick or afflicted," it does not state a cause of action.

This conclusion, however, is founded on due process considerations, not on a conviction that the phrase "sick or afflicted" must logically and necessarily exclude "normal" physiological conditions. Plaintiffs cite numerous decisions characterizing childbirth as a normal biological function of women rather than a disease or sickness. (See, e.g., *Cleveland Board of Education* v. *LaFleur* (1974) 414 U.S. 632, 652 [39 L.Ed.2d 52, 67, 94 S.Ct. 791], conc. opn. Powell, J.; *Cerra* v. *East Stroudsburg Area School District* (1973) 450 Pa. 207 [299 A.2d 277]; *Banti* v. *State* (1956) 163 Tex.Crim.Rep. 89 [289 S.W.2d 244, 247]; *Crees* v. *California State Board of Medical Examiners* (1963) 213 Cal.App.2d 195, 212, fn. 8 [28 Cal.Rptr. 621].) But these references are not particularly helpful in construing section 2141. As stated in *Crees, supra,* quoting from *Commonwealth* v. *Porn* (1907) 196 Mass. 326 [82 N.E. 31, 31]: " 'Although childbirth is not a disease, but a normal function of women, yet the practice of medicine does not appertain exclusively to disease, and obstetrics as a matter of common language has long been treated as a highly important branch of the science of medicine.' " (P. 212, fn. 8.) The issue, then, appears to be not whether pregnancy is a normal or an abnormal condition, but whether as a normal condition it may still be considered a sickness or affliction within the contemplation of section 2141.

The question is close. ■ Generally, the provisions of a penal statute "are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." (Pen. Code, § 4;

see *People* v. *Fair* (1967) 254 Cal.App.2d 890, 892 [62 Cal.Rptr. 632].) Where the statute is susceptible of two reasonable constructions, however, a defendant is ordinarily entitled to that construction most favorable to him. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *Walsh* v. *Dept. Alcoholic Bev. Control* (1963) 59 Cal.2d 757, 764-765 [31 Cal.Rptr. 297, 382 P.2d 337].) ■■■ Application of such a rule, since the language of the first part of section 2141 referring to the sick or afflicted may fairly be read either to include or to exclude normal pregnancy and childbirth, would suggest that the language should be construed to exclude practices authorized by section 2140: namely, attendance upon a normal delivery, without the use of drugs or instruments.

The People allege, however, that in the matter before us plaintiffs did more than purport to practice midwifery. By reference to section 2137, the complaint charges that plaintiffs held themselves out as competent to perform acts not within the "normal childbirth" limitations of section 2140. As to these latter practices, the complaint does state a cause of action.

The reference to practices authorized under section 2137 for a certificated physician and surgeon encompasses surgery, use of instruments and drugs, and other acts not permitted under section 2140 in connection with a midwife's attendance upon normal childbirth. Complications of pregnancy that require the kind of procedures authorized only under section 2137 unquestionably do qualify as "sicknesses" or "afflictions." Consequently, an allegation that plaintiffs represented themselves as capable of undertaking activities *not* related to normal childbirth is sufficient to state a cause of action under the provision of section 2141 prohibiting holding oneself out to treat the "sick or afflicted."

■■■ The second part of the complaint, as noted above, alleges that plaintiffs actually treated one Terry Johnson for a "physical condition." This part parallels the language of the second portion of section 2141, which provides that a person "who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury or other mental or *physical condition* of any person, without having at the time of so doing a valid, unrevoked certificate . . . is guilty of a misdemeanor." (Italics added.) This clause by its own terms applies to a wider set of circumstances than does the first portion of the statute which deals only with treating or holding oneself out to treat the sick or afflicted. The term "physical condition" is broad and, unlike the

phrase "sick and afflicted," does not necessarily imply the existence of an abnormality or disease. It seems readily to encompass pregnancy and childbirth.

■ In interpreting this language we are aided by certain accepted rules of statutory construction. It is well established that a specific provision should be construed with reference to the entire statutory system of which it is a part, in such a way that the various elements of the overall scheme are harmonized. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].) ■ The policy sought to be implemented should be respected (*People* v. *Navarro* (1972) 7 Cal.3d 248, 273 [102 Cal.Rptr. 137, 497 P.2d 481]), and to this end, titles of acts, headnotes, and chapter and section headings may properly be considered in determining legislative intent. (*Navarro, supra,* at p. 273; *Gonzales* v. *Superior Court* (1935) 3 Cal.2d 260, 263 [44 P.2d 320].)

■ Section 2141 is part of a general statutory scheme contained in division 2 of the Business and Professions Code and entitled "Healing Arts." As originally enacted, section 2135 authorized the issuance of certificates to practice medicine or surgery, podiatry, and midwifery. (Stats. 1937, ch. 399, p. 1258; see also Stats. 1917, ch. 81, pp. 96-97.) The precise acts authorized under each certificate were specified in separate sections. (Stats. 1937, ch. 399, pp. 1258-1259, 1277-1279; §§ 2137-2140.) Midwifery, for example, was and still is defined as "the furthering or undertaking by any person to assist a woman in normal childbirth." (§ 2140, reenacted as § 2350.)

Following the licensing provision is section 2141 which makes it a misdemeanor to engage in various types of acts without the required certificate. Because of its place in the statutory scheme, and given its language, section 2141 appears to be specifically intended to prohibit uncertificated persons from engaging in the practices authorized under the various certificates described in the chapter, including the midwifery certificate. Any other interpretation would render much of this scheme unnecessary and ineffective, authorizing certificates for activities in which it was already proper and legal to engage. We have generally been exceedingly reluctant to attach an interpretation to a particular statute which renders other existing provisions unnecessary. (See, e.g., *People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d

672]; *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].)

In 1949, section 2135 was amended to exclude midwifery from that group of practices for which new certificates could be issued. (Stats. 1949, ch. 898, p. 1670.) Significantly, the sections defining midwifery and the practices authorized under a midwifery certificate were retained in the statutory scheme (§ 2140, reenacted as § 2350), as were the provisions designating the conditions under which a midwife's certificate could be revoked. (§§ 2400-2408, reenacted as §§ 2351-2359.) The obvious inference to be drawn from the retention of these provisions is that the Legislature intended that the practice of midwifery without a certificate be prohibited under section 2141. While new certificates could not be issued, midwifery could continue to be lawfully practiced under an unrevoked certificate issued before 1949.

In 1975, new legislation became effective which again provided for the certification of midwives. (§§ 2350, 2746-2746.8.) Like the sections discussed above, these provisions would be without effect unless the practice of midwifery without a valid certificate be considered a violation of section 2141.

Prior California case law also supports the conclusion that the treatment of pregnancy and childbirth without a valid certificate is proscribed by section 2141. In *Crees* v. *California State Board of Medical Examiners, supra,* 213 Cal.App.2d 195, for example, it was held that the severance of the umbilical cord was a practice which, without the proper certificate, constituted the unauthorized practice of medicine under section 2141. (See also *People* v. *Bernhardt* (1963) 222 Cal.App.2d 567 [35 Cal.Rptr. 401].) The cutting of an umbilical cord clearly is one of the practices authorized under a valid midwifery certificate. (See §§ 2359 (former § 2408), 2350 (former § 2140).) Similarly, the appellate court in *People* v. *Cosper* (1926) 76 Cal.App. 597 [245 P. 466], held that practices which consisted of no more than an examination of a pregnant woman and the performance of prayers and dances violated the predecessor statute of section 2141. (Stats. 1917, ch. 81, p. 114; see also 55 Ops.Cal.Atty.Gen. 353.)

█ Plaintiffs find significance in the existence of statutes such as Business and Professions Code section 551, imposing the duty of treating a newborn child's eyes not only upon physicians and midwives, but also upon "any person" assisting in the birth. (See also Health & Saf. Code,

§ 305.) It is argued that such statutes, extant both during the periods when midwifery certificates were available and when they were not, evidence legislative recognition that unlicensed persons may lawfully attend and assist a childbirth.

In the absence of other indications of legislative intent, plaintiffs' argument might have some validity. However, in the light of the overall statutory licensing pattern and those specific provisions which prohibit practices relating to the healing arts, it seems fair to conclude that these sections, while imposing duties, do not thereby authorize conduct which is otherwise unauthorized. In short, the statutes simply provide that a person who may be assisting a childbirth under emergency circumstances (§ 2144), or whose attendance is unlawful under section 2140, may violate a second duty by failing to comply with procedures necessary to ensure the welfare of the infant.

 Thus, although normal childbirth is not a "sickness or affliction" within the meaning of section 2141, we conclude, in light of the total statutory scheme governing the practice of the "healing arts," that section 2141's prohibition against unlicensed persons treating a "physical condition" was intended to encompass the practice of midwifery.

### 2. Constitutionality of Section 2141

 (a) *Vagueness.* Plaintiffs assert that section 2141 is so ambiguous and uncertain that it cannot reasonably be determined whether its prohibition against unlicensed diagnosis and treatment forbids various forms of otherwise innocent conduct such as the possession by a public library of a medical textbook; the statement by an unlicensed person to a friend that the friend sounds like he has a cold; the suggestion that a grief be assuaged by a long trip; or advice by an unlicensed person that one suffering from a cold administer to himself aspirin and orange juice.

 It is an established principle of constitutional law that ". . . a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126]; see also *Smith* v. *Goguen* (1974) 415 U.S. 566, 572-576 [39 L.Ed.2d 605, 611-614, 94 S.Ct. 1242]; *Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156, 162 [31 L.Ed.2d 110, 115-116,

92 S.Ct. 839]; *People* v. *Barksdale* (1972) 8 Cal.3d 320, 327 [105 Cal.Rptr. 1, 503 P.2d 257]; Note, *The Void-for-Vagueness Doctrine in the Supreme Court* (1960) 109 U.Pa.L.Rev. 67.)

In examining statutes challenged on vagueness grounds, courts have looked not merely at the hypothetical cases to which the statute has uncertain applicability, but also at the act allegedly committed by the charged defendant. ▮ The presumptive validity of a legislative act militates against invalidating a statute merely ". . . because difficulty is found in determining whether certain marginal offenses fall within . . . [its] language. [¶] Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that *his* contemplated conduct is proscribed." (*United States* v. *National Dairy Corp.* (1963) 372 U.S. 29, 32 [9 L.Ed.2d 561, 565, 83 S.Ct. 594], citations omitted, italics added; see also *Parker* v. *Levy* (1974) 417 U.S. 733, 756-757 [41 L.Ed.2d 439, 457-458, 94 S.Ct. 2547].) ▮ We are not obliged to ". . . consider every conceivable situation which might arise under the language of the statute . . . ." (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]), so long as that language may be given ". . . a reasonable and practical construction in accordance with the probable intent of the Legislature" and encompassing the conduct of the defendants (*County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 673 [114 Cal.Rptr. 345, 522 P.2d 1345]). Thus plaintiffs cannot complain of the vagueness of a statute if the conduct with which they are charged falls clearly within its bounds. In the matter before us we conclude that it does.

▮ It is apparent that the Legislature intended section 2141 to apply only to persons actually purporting to practice the "healing arts." Medical services rendered by unlicensed persons in an emergency situation are expressly exempted from the operation of section 2141, along with "the domestic administration of family remedies" (§ 2144) and therapy consisting solely of prayer (§ 2146). Informal recommendation among friends as to the efficacy of nonprescription vitamin compounds or ocean cruises seems akin to sharing a "family remedy," as does the presence during childbirth of a husband, friend or relative who merely offers verbal reassurance, soothing massage, or assistance in breathing exercises. Midwifery, however, is characterized by the Legislature as a "healing art," and the activities of midwives are not properly analogous to the peripheral services of an attending husband or family member, precisely because the midwife is consulted for her expertise or experience as an advisor and assistant. Thus, an unlicensed person

violates section 2141 in undertaking to render skilled, material assistance in the birth process, to recognize the development of certain problems that may occur (see, e.g., §§ 2400, 2402-2408, reenacted as §§ 2353-2359), to cut the umbilical cord, or to engage in any other acts that involve assumption of responsibility for the delivery of the child. The conduct with which plaintiffs are charged—rendering or offering to render services authorized under sections 2140 and 2137—unquestionably falls within this category.

Greater precision of statutory language might well be required if First Amendment rights were involved. (See *Smith* v. *Goguen, supra,* 415 U.S. 566, at p. 573 [39 L.Ed.2d 605, at p. 612]; *Baggett* v. *Bullitt* (1964) 377 U.S. 360, 372 [12 L.Ed.2d 377, 385, 84 S.Ct. 1316]; *People* v. *Barksdale, supra,* 8 Cal.3d 320, 327; *Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 339 [38 Cal.Rptr. 625, 392 P.2d 385].) No important constitutionally protected right is endangered, however, by the imprecision inhering in this statute, a health and safety regulation that is constitutionally sound so long as an accused can reasonably be held to understand by the terms of the statute that his conduct is prohibited. (See *People* v. *Kirk* (1975) 49 Cal.App.3d 765, 768-770 [122 Cal.Rptr. 653]; *People* v. *Anderson* (1972) 29 Cal.App.3d 551, 561 [105 Cal.Rptr. 664]; see also *United States* v. *Harriss* (1954) 347 U.S. 612, 617 [98 L.Ed. 989, 996, 74 S.Ct. 808].)

■ (b) *Overbreadth.* Plaintiffs contend further that because section 2141 purports to regulate nondiseased as well as diseased conditions, the statute is unconstitutionally overbroad. Arguing that the language "or other mental or physical condition of any person" embraces, among other things, grief, backaches, acne, and colds, they assert that the right of privacy of prospective patients and the free speech rights of unlicensed persons wishing to advise others concerning these conditions, are infringed by the breadth of the statutory language.

■ Statutes which prohibit constitutionally protected conduct are said to be overbroad and their enforcement may constitute a denial of due process. (*Gooding* v. *Wilson* (1972) 405 U.S. 518, 520-521 [31 L.Ed.2d 408, 413-414, 92 S.Ct. 1103]; *Coates* v. *City of Cincinnati* (1971) 402 U.S. 611, 614 [29 L.Ed.2d 214, 217-218, 91 S.Ct. 1686]; *Aptheker* v. *Secretary of State* (1964) 378 U.S. 500, 508 [12 L.Ed.2d 992, 998-999, 84 S.Ct. 1659]; *Katzev* v. *County of Los Angeles* (1959) 52 Cal.2d 360, 367-368 [341 P.2d 310].) Nonetheless, a statute that has some restrictive effect upon protected activities may be valid, if it vindicates important interests of

society. (*CSC* v. *Letter Carriers* (1973) 413 U.S. 548, 580-581 [37 L.Ed.2d 796, 817-818, 93 S.Ct. 2880]; *Cox* v. *Louisiana* (1965) 379 U.S. 559, at p. 564 [13 L.Ed.2d 487. at p. 492, 85 S.Ct. 476]; *Mandel* v. *Municipal Court* (1969) 276 Cal.App.2d 649, 662 [81,Cal.Rptr. 173].)

■ It does not appear that the phrase "other mental or physical condition," read in the context of the entire section, is overbroad. The proscription of section 2141 applies to one who "diagnoses, treats, operates for, or prescribes" without a valid certificate. These verbs have obvious reference to the title of the statutory scheme, "Healing Arts." (See *People* v. *Navarro, supra,* 7 Cal.3d 248, at p. 273.) Thus, although the expression' "other mental or physical condition" is admittedly broad, the verbs preceding it give the statute a narrower meaning which rests comfortably within the legitimate and intended purpose of the sec-. tion. ■ The state, while subject to constitutional prohibitions against any limitation on the advice given among friends, clearly has a strong and demonstrable interest in protecting its citizens from persons who claim some expertise in the healing arts, but whose qualifications have not been established by the receipt of an appropriate certificate. (See *People* v. *Barksdale, supra,* 8 Cal.3d 320, at p. 335; *Bohannon* v. *Board of Med. Examiners* (1914) 24 Cal.App. 215, 219 [140 P. 1098].) ■ Section 2141 is carefully directed toward serving this important health and safety interest.

■ (c) *Right of Privacy.* Plaintiffs assert that if section 2141 is construed to prohibit attending and assisting a pregnant woman in childbirth, it violates the expectant mother's right of privacy. They argue that a woman's right to privacy encompasses the liberty to choose whomever she wants to assist in the delivery of her child.

In recent years the constitutional right to privacy, derived from the First, Fourth, Fifth, Ninth and Fourteenth Amendments, has been substantially expanded to protect certain personal choices pertaining to child-rearing, marriage, procreation and abortion. (E.g., *Roe* v. *Wade* (1973) 410 U.S. 113, 152-153 [35 L.Ed.2d 147, 176-177, 93 S.Ct. 705]; *Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 453-454 [31 L.Ed.2d 349, 362-363, 92 S.Ct. 1029]; *Loving* v. *Virginia* (1967) 388 U.S. 1, 12 [18 L.Ed.2d 1010, 1018, 87 S.Ct. 1817]; *Griswold* v. *Connecticut* (1965) 381 U.S. 479, 485-486 [14 L.Ed.2d 510, 515-516, 85 S.Ct. 1678]; *Prince* v. *Massachusetts* (1944) 321 U.S. 158, 166 [88 L.Ed. 645, 652-653, 64 S.Ct. 438]; *Skinner* v. *Oklahoma* (1942) 316 U.S. 535, 541 [86 L.Ed. 1655, 1660, 62 S.Ct. 1110];

*Meyer* v. *Nebraska* (1923) 262 U.S. 390, 399 [67 L.Ed. 1042, 1045, 43 S.Ct. 625, 29 A.L.R. 1446]; *People* v. *Belous* (1969) 71 Cal.2d 954, 963 [80 Cal.Rptr. 354, 458 P.2d 194], cert. den. 397 U.S. 915 [25 L.Ed.2d 96, 90 S.Ct. 920].) However, the right of privacy has never been interpreted so broadly as to protect a woman's choice of the manner and circumstances in which her baby is born. Indeed, *Roe, supra,* appears specifically to exclude the right to make such choices from the constitutional privacy right. In *Roe,* the United States Supreme Court held expressly that the state may proscribe the performance of an abortion at any stage of pregnancy by a person who is not a licensed physician. (*Roe, supra,* at p. 165 [35 L.Ed.2d at pp. 183-184].) More significantly, the court held that at the point of viability of the fetus, the state's interest in the life of the unborn child supersedes the woman's own privacy right, and at that point (the beginning of the third trimester) abortion may be prohibited except where necessary for the preservation of the mother's life or health. (*Roe, supra,* at pp. 164-165 [35 L.Ed.2d at pp. 183-184]; see also *People* v. *Barksdale, supra,* 8 Cal.3d 320, at p. 338.)

It is true that the Legislature has never attempted to require women to give birth in a hospital or with a physician in attendance, just as it has not generally sought to compel adults to obtain medical treatment. But the state has a recognized interest in the life and well-being of an unborn child. (*Roe* v. *Wade, supra,* 410 U.S. 113, at p. 165 [35 L.Ed.2d 147, at pp. 183-184]; *People* v. *Barksdale, supra,* 8 Cal.3d 320, at p. 335.) For the same policy reasons for which the Legislature may prohibit the abortion of unborn children who have reached the point of viability, it may require that those who assist in childbirth have valid licenses. Its interest in regulating the qualifications of those who hold themselves out as childbirth attenders is an equally strong one, for many women must necessarily rely on those with qualifications which they cannot personally verify. Nor is the state's interest in requiring a license diminished by the fact that childbirth with assistance, even the assistance of an unlicensed person, may be safer than self-delivery. The state need not prohibit the most unlikely of circumstances—childbirth without assistance—in order to justify regulating the much more common event—assistance of the mother at childbirth. In the area of public welfare, the Legislature need not attack every social problem at once. (*Dandridge* v. *Williams* (1970) 397 U.S. 471, 486-487 [25 L.Ed.2d 491, 502-503, 90 S.Ct. 1153]; *People* v. *Barksdale, supra,* 8 Cal.3d 320, at p. 338.) Plaintiffs' further arguments as to the safety of home deliveries are more properly addressed to the Legislature than to the courts, particularly since the Legislature, by its

recent enactments pertaining to midwifery (e.g., §§ 2350-2359), has shown continuing interest in the area.

As we have concluded that normal childbirth, while not a sickness or affliction, is a "physical condition" within the meaning of the second part of Business and Professions Code section 2141, it is clear that the practice of midwifery without a certificate is prohibited, and that the complaint herein does state a cause of action by reference to both sections 2137 and 2140. Accordingly, the superior court properly denied a writ of mandate, and trial in the municipal court should proceed in accord with the views expressed herein.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

Appellants' petition for a rehearing was denied January 5, 1977.