[Crim. No. 11887. Fourth Dist., Div. One. July 28, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ANDREW ALKIRE, Defendant and Appellant.

120

---

**COUNSEL**

William N. Pabarcus, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Richard D. Garske, Steven V. Adler and Richard D. Hendlin, Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

**WORK, J.**—Today we hold, in the absence of an express agreement, a person whose guilty plea is obtained in exchange for a promise any future confinement will be for a specified period, may not be later sentenced to a longer term where sentencing follows revocation of probation, even though imposition of sentence was originally suspended.

James Andrew Alkire, an alcoholic and a drug abuser, entered a bargained guilty plea to felonious assault (Pen. Code, § 245, subd. (a)); committed during a drinking episode. The plea was induced by the court's promise further confinement, if any, would not exceed two years, the mitigated term. Eventually, Alkire received probation, under a suspended imposition of sentence, served one year as a condition, and was ordered not to use alcoholic beverages during the probation term. Five days after his release from jail he was arrested for being under the influence. Probation was then revoked and he was sentenced to state prison for a three-year term. He correctly claims this violates the promise which induced his change of plea.

Penal Code section 1203.2, subdivision (c) states: "Upon any revocation and termination of probation the court may, if the *sentence* has been suspended, pronounce judgment for any time *within the longest period for which the person might have been sentenced.* However, if the judgment has been pronounced and the execution thereof had been suspended, the court may revoke such suspension and order that the judgment shall be in full force and effect. In either case, the person shall be delivered over to the proper officer to serve his sentence, less any credits herein provided for." (Italics added.)

Although, "the longest period for which . . . [Alkire] may have been sentenced" is susceptible to two possible interpretations: (1) the four-year maximum term prescribed by Penal Code section 245, or (2) the two-year cap enunciated in the plea bargain agreement—"[w]here the statute is susceptible of two reasonable constructions . . . a defen-

dant is ordinarily entitled to that construction most favorable to him. [Citations.]" (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 488 [134 Cal.Rptr. 630, 556 P.2d 1081].)

Moreover, rule 435(b)(1) of the California Rules of Court requires: "(b) Upon revocation and termination of probation pursuant to section 1203.2, when the sentencing judge determines that the defendant shall be committed to prison:

"(1) If the imposition of sentence was previously suspended . . . .

"*The length of the sentence shall be based on circumstances existing at the time probation was granted*, and subsequent events may not be considered in selecting the base term nor in deciding whether to strike or specifically not order the additional punishment for enhancements charged and found." (Italics added.)

Here, at the time probation was granted Alkire could have been sentenced to a term no longer than two years—pursuant to the negotiated plea arrangement. The plea bargain, therefore, constituted the only *relevant circumstance* existing when probation was granted, and necessarily determines the length of Alkire's sentence upon revocation of probation. To hold otherwise ignores the language of the statute.

Under different circumstances, if the court had not suspended sentence but pronounced the two-year cap under the plea bargain and then suspended its execution before granting probation, Alkire would face only his promised two years upon violation of the probation. (See Cal. Rules of Court, rule 435(b)(2);[1] see also Pen. Code, § 1203.2, subd. (c), *supra.*) There is no reasonable purpose in subjecting him to an additional two years—simply because the court chose to suspend imposition, rather than actually impose, sentence.

Finally, had Alkire waived probation, opting instead for immediate incarceration, under the plea bargain (see Cal. Rules of Court, rule 433(a)(2)) he would only have been subject to an actual term of two years—less 115 days credit for time already served. Nowhere does the record show he voluntarily waived his right to be sentenced in this man-

---

[1]California Rules of Court, rule 435(b)(2) reads: "If the execution of sentence was previously suspended, the judge shall order that the judgment previously pronounced be in full force and effect and that the defendant be committed to the custody of the Director of Corrections for the term prescribed in that judgment."

ner, nor that he understood the conditions of his probation included the possibility of serving four years state prison time in the event he violated its terms. The colloquy during the *change of plea hearing* does not show otherwise:

"The Court: Now, is this crime a felony or misdemeanor?

"Defendant Alkire: A felony.

"The Court: What is the maximum sentence you could receive?

"Defendant Alkire: Two years.

"Mr. Smith: Four years for the crime, two years on the plea bargain.

"The Court: Four years in state prison and a fine of $5,000 is the maximum?

"Defendant Alkire: Yes.

"The Court: And if you were sent to state prison and parole revoked, you could be sent back to state prison for four years. Do you understand that?

"Defendant Alkire: Yes, Sir."

Although the dissent believes this admonition adequately informed Alkire of his maximum penalty—in the event he violated probation, a close reading of the transcript reveals *probation* was not anticipated at this stage. Rather, the statement was an attempt to advise him of the *parole* consequences of his guilty plea—as set forth in Penal Code section 3000.[2] (See Cal. Rules of Court, rule 433(e).)

Each party agrees the precise issues presented here were resolved in *People* v. *Turner* (1975) 44 Cal.App.3d 753 [118 Cal.Rptr. 924], and in *People* v. *Allen* (1975) 46 Cal.App.3d 583 [120 Cal.Rptr. 127]. However, *Allen* does not involve, or even discuss, our issue, and *Turner* is factually different.

---

[2]Even under Penal Code section 3000, however, in the event Alkire's parole was revoked, he could be sent back to the state prison only for the remainder of his term as bargained for under the plea arrangement (616 days).

First of all, in this case, the plea bargain form stated as follows: "Judge *promises* that should further custody be imposed, a term no greater than 2 years, the mitigated term shall be imposed." (Italics added.) The court orally read this exact phrase (albeit piecemeal) to insure Alkire's awareness of the judge's promise. There is no limitation on when, or in what manner, the *further custody* is imposed.

*People* v. *Allen* is not in point. There the prosecution unsuccessfully appealed a postjudgment probation term modification releasing Allen from custody earlier than contemplated in a plea bargain. The Court of Appeal ruled only on the question of whether such a plea bargain, setting specific custodial probation terms, deprived the court of its inherent judicial power to modify those terms in the absence of express language to that effect. Then, in dicta, irrelevant to its resolution of that issue, the court stated: "post-judgment modification of probation can make the ultimate disposition of the case more onerous to defendant than originally bargained for." (*Id.*, at p. 590.) The People tell us this language is a statement a defendant violating probation may be sentenced accordingly, notwithstanding the terms of any plea bargain. This misstates the holding which was concerned only with the power of the court to modify continuing terms of probation, a proposition with which we need not quarrel since our case does not involve a modification of existing probation terms.

In *Turner* the defendant was not promised any specific limitation on the length of his incarceration, only that he would do his time, if any, locally. After violating probation by pulling an armed robbery,[3] he was sentenced to prison. Before entering his bargained plea, the court expressly advised he faced a maximum sentence of one to fifteen years in state prison. At sentencing Turner was asked if he accepted each term of his probation, and he did so. (Alkire was never advised he had the right to object to probation, nor was he advised one of the consequences of his failing to fulfill each condition of probation could be his being sent to state prison for a term in excess of the "promised" two years.)

In *Turner* the court stressed there was nothing in the plea bargain providing for what would happen should probation be violated. Here, implicit in the judge's promise is a two-year limitation on any state prison time should it be imposed. The language would not alert anyone of a

[3]The opinion stressed the significance of the manner in which the probation terms were violated. If this is significant, we point to the gross disparity between Alkire's breach and that of Turner.

potential exposure to a longer term. If we take the prosecution's position, that granting of probation somehow affects the promised incarceration maximum, we could find it really means, as the trial court apparently felt, no more than two years each time you have the opportunity to revoke, or modify probation. This inappropriately relegates the bargaining process to one of dealing in sleight-of-hand, shadows and illusions when dealing with substantial legal and constitutional rights.

Even here, the sentencing judge was uncertain whether he was bound by the bargain made and accepted by the "promising" judge, and believed he was honoring the plea bargain because the midterm, three-year commitment really resulted in a new, current two years of service (because the one year already served as a condition of probation must be credited against that term).

In every case involving a bargain setting a maximum term of incarceration, the prosecution would have us insert implied language essentially as follows: "we will give you the mitigated two-year prison term if we decide to send you to prison now, but if you are successful in convincing the court you deserve a chance on probation, and fail, all bets are off and you may be sentenced to the aggravated term."

Assuming such a bargain may be struck, it must at least be expressed at a time when a defendant still has the ability to negotiate, not after negotiations are closed.[4]

The appropriate relief where a plea bargain is expressly, or impliedly, rejected by the court *before imposing any restrictions on a defendant by way of sentence, or probation while suspending sentence imposition*, is to give a defendant the opportunity to withdraw his guilty plea, go back to square one and put the People to their proof. (Pen. Code, § 1192.5.) Alkire has already served time as a condition of probation and the preplea status quo cannot be restored. He is entitled to his bargain.

---

[4]It might be said, Alkire cannot complain the court is now reneging on its part of the bargain since his probation default violates the bargain. However, Alkire agreed only to waive his constitutional rights to trial, confrontation, etc., enter a plea of guilty to the charge and expose himself to a potential two-year state prison sentence. When he withdrew his not guilty plea, and entered the plea upon which he stands convicted, he gave the prosecution all it bargained for.

Judgment is modified to show the state prison commitment to be two years, the mitigated term. The trial court and the Department of Corrections are ordered to change their records accordingly.

Langford, J.,* concurred.

**COLOGNE, Acting P. J.**—I must respectfully dissent.

When the plea bargain was struck, Alkire agreed to waive his constitutional rights and plead guilty to one count of aggravated assault (Pen. Code, § 245, subd. (a)) on the condition, among others, the court at the upcoming probation and sentence hearing would not sentence him to serve more than two years.

The full statement of the bargain in the change of plea form which Alkire initialed in the margin and signed was as follows: "Defendant to cop § 245(a) [count I]; people to dismiss all remaining counts and allegations. Defendant to be examined by appropriate body pursuant to Penal Code § 1203.03. Judge promises that should further custody be imposed, a term no greater than 2 years, the mitigated term shall be imposed. Defendant to make full restitution to victim for medical costs."

The trial court's full statement reflecting this aspect of the change of plea was: "THE COURT: Now, on the back here on paragraph 12 it says, 'Defendant to change his plea to Penal Code section 245(A), count one. People to dismiss all remaining counts and allegations. Defendant to be examined by appropriate body pursuant to Penal Code section 1203.03. Judge promises that should further custody be imposed in—

"MR. SMITH [defense counsel]: Does it say no more than two years?

"THE COURT: 'No greater than two years.' 'A term no greater than two years, the mitigating term shall be imposed. Defendant to make full restitution to victim for medical costs.'

"Do you understand all that?

---

*Assigned by the Chairperson of the Judicial Council.

"DEFENDANT ALKIRE: Yes, sir."[1]

The court could have sentenced him to two years and he would have had no complaint. Instead, Alkire was accorded more leniency than he bargained for—he was given probation on certain specified conditions and he was advised if "parole" was violated he could be given up to four years in prison. The consideration for waiving his constitutional rights was fully given. If he had objected to probation or other terms of the bargain, he could have withdrawn his plea; he did not. Now, having eaten his cake, he wants it too.

In *People* v. *Turner* (1975) 44 Cal.App.3d 753 [118 Cal.Rptr. 924], the defendant initially pled guilty with a stipulation any time served would be local. At sentencing, the trial court rejected the stipulation and the plea was withdrawn. The case went to trial and following a mistrial, defendant entered a plea of guilty with the same agreement he would only be given local time and, further, his prior felony conviction allegation would be stricken. He was granted probation. Thereafter revocation proceedings were instituted and defendant was given an indeterminate state prison sentence. On appeal, the defendant contended the trial court violated the plea bargain by ordering state prison time. In response, this court opined: "Here Turner pled guilty to a charge of burglary; he bargained for local time; he received probation. Probation was a more, not less, lenient sentence than Turner bargained for. There was nothing in this plea providing for what would happen if probation were violated. Needless to say, such a bargain would be difficult to negotiate since neither party would know in advance what the violation of probation might be. Here, after the violation occurred, there was no plea bargain involved because the bargain contemplated the initial sentencing proceeding only. It was within the discretion of the trial court to look at the situation anew . . . ." (*People* v. *Turner, supra*, 44 Cal.App.3d 753, at p. 757.)

---

[1]Benefits of the plea bargain to Alkire, aside from the reduced maximum term on the aggravated assault to which he was pleading, included:

a. Dismissal of the allegation he personally inflicted great bodily injury (Pen. Code, § 12022.7—additional term of three years in prison).

b. Dismissal of charge of battery with serious bodily injury, count two (Pen. Code, §§ 242, 243—punishable as misdemeanor or by two, three or four years prison).

c. Dismissal of allegations of five prior felony convictions with terms separately served by Alkire (Pen. Code, § 667.5, subd. (b)—additional one-year prison term for each).

d. Alkire's commitment to Department of Corrections for diagnostic study before actual sentencing occurred (Pen. Code, § 1203.03).

This case is dispositive of the issue before the court. Its essential holding is that where a defendant receives at the initial sentencing hearing the bargain or a more lenient sentence than the bargain provided, and he is granted probation, then the bargain is fulfilled and upon any future violation of probation the court may "look at the situation anew."

There is no distinction between that case and this. By the process of judicial notice (Evid. Code, §§ 452, subd. (d), 459), it is to be determined imposition of sentence was suspended in Turner's case just as it was in Alkire's.[2] Thus, Penal Code section 1203.2, subdivision (c), applies to each case permitting the court upon revocation of probation to "pronounce judgment for any time within the longest period for which the person might have been sentenced."

Contrary to the majority's characterization of the facts, I believe when the trial court here referred to "further custody," it clearly was speaking of nothing more than custody immediately following Alkire's commitment to the Department of Corrections for the diagnostic study under Penal Code section 1203.03, the subject of the sentence just preceding the one using the quoted words. It is improper in my view to analyze the trial court's words without reference to the whole content of the bargain, and particularly the sentence immediately preceding the sentence using the phrase "further custody." Thus, as I read the trial court's statement of the bargain, it had to do only with the upcoming hearing for sentencing pursuant to the plea bargain just completed. As in *Turner*, it had nothing to do with sentencing after a revocation of probation.

The record discloses at the sentencing hearing Alkire was advised the maximum penalty could be four years custody. The court asked Alkire if he understood the maximum sentence he could receive and his counsel stated "four years for the crime, two years on the plea bargain," but the court stated "four years in state prison and a fine of $5,000 is the maximum"; the court then followed with "and if you were sent to state

---

[2] The probation order in Turner's case read, in part: "IT IS THEREFORE NOW ORDERED by the Court that the imposition of sentence upon the defendant be and the same is hereby suspended for the term of three years from the date hereof, during which time the defendant is committed to the charge and supervision of the Probation Officer of said County of San Diego and of this Court; . . ."

prison and parole revoked, you could be sent back to state prison for four years. Do you understand that?" Alkire replied he did.[3]

The fact Alkire's original sentence (probation) was more lenient than that bargained for removes the necessity of advising him he had a right to withdraw the plea if he was then sentenced to a term greater than that provided in the plea bargain since there would be no prejudice. He has had more than ample warning of the consequences in the event of a probation violation and a postjudgment order.

The failure to observe the condition of probation to abstain from alcohol, which very clearly is a cause of his violent behavior, justified the sentence ultimately imposed especially when one considers the earlier probation report which suggested the upper term plus three years extra for a Penal Code 12022.7 enhancement. The Department of Corrections' diagnostic report referred to him as "an extremely high risk candidate for probation." The ultimate sentence imposing the three-year middle term without enhancement was not an abuse of discretion.

In connection with certain other points made by the majority, I cannot agree there is ambiguity in the language of Penal Code section 1203.2, subdivision (c), permitting application of a most favorable construction for defendants. The phrase allowing judgment upon probation revocation for the "longest period for which the person [or defendant] might have been sentenced" has been in the codified law since 1903 (see Pen. Code, § 1203, as amended by Stats. 1903, ch. 34). I am convinced the quoted phrase neither had nor has any possible reference to a plea bargained sentence inasmuch as plea bargaining was not even officially recognized until 1970 (see *People* v. *Collins* (1978) 21 Cal.3d 208, 215 [145 Cal.Rptr. 686, 577 P.2d 1026]; *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409]; Pen. Code, § 1192.5, as added by Stats. 1970, ch. 1123).[4]

---

[3]I cannot find significance, as does the majority, in the trial court's use of the word "parole" instead of "probation" in giving this admonition. The essential repercussions of a violation of the terms of one's conditional freedom are similar whether that freedom is due technically to parole or to probation.

[4]Similarly, I cannot accept the majority's inclusion of the plea bargained sentence within the meaning of the word "circumstances" in rule 435(b)(1). "Circumstances," as used in the sentencing rules, refers to the crime or the defendant, not the plea bargained sentence (see Cal. Rules of Court, rules 419(a)(2) and (4); 421(a) and (b); 423(a) and (b)).

The reference to the "longest period" is to the time period prescribed by the statutes, not to any plea bargained lesser sentence. Plain meaning of the phrase is reflected in decisions such as *People v. Turner, supra,* 44 Cal.App.3d 753, and *People v. Allen* (1975) 46 Cal.App.3d 583 [120 Cal.Rptr. 127], in which it is said (at page 590): "[P]ost-judgment modification of probation can make the ultimate disposition of the case more onerous to the defendant than originally bargained for."

Valuable and correct precedents such as *Turner* and *Allen* should not be overturned.

Finally, viewing the record in support of the trial court's judgment, it cannot be said the court relied on facts arising postjudgment. At the sentencing hearing in which the judgment under review was made, in fixing the length of sentence, the court said nothing about events arising after the original grant of probation. Accordingly, contrary to Alkire's argument, rule 435(b)(1) of the California Rules of court was not violated and the holding of the case of *People v. Colley* (1980) 113 Cal. App.3d 870 [170 Cal.Rptr. 339], is inapplicable.[5]

I would affirm the judgment.

Respondent's petition for a hearing by the Supreme Court was denied October 28, 1981. Mosk, J., and Richardson, J., were of the opinion that the petition should be granted.

[5]Rule 435(b)(1) provides, in part: "The length of the sentence shall be based on circumstances existing at the time probation was granted, and subsequent events may not be considered in selecting the base term nor in deciding whether to strike or specifically not order the additional punishment for enhancements charged and found."

Under the rule, the *Colley* case held it was reversible error to increase a middle term of three years pronounced at the time of commitment for diagnostic study under Penal Code section 1170, subdivision (d), to the upper term of four years based on defendant's conduct while on probation following imposition of the middle term.