Filed 12/2/15  P. v. Badilla CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOE BADILLA,<br><br>    Defendant and Appellant. | B256297<br><br>(Los Angeles County<br>Super. Ct. No. BA 418375) |

        APPEAL from an order of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

        Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Joe Badilla was convicted by a jury of several charges including possession of a firearm near a school. (Pen. Code, § 626.9, subd. (b).)[1] On appeal, he challenges his conviction under section 626.9 and the denial of his *Pitchess* motion.[2] Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 13, 2013, defendant was walking south on Concord Street in Boyle Heights. Despite the 90-degree weather, he was wearing a hooded sweatshirt and oversized baggy jeans. When he saw a Los Angeles Police Department patrol car coming in his direction, he crouched behind a parked vehicle, pulled the hood of his sweatshirt over his head, turned around, and headed north at a fast pace. One of the officers in the patrol car, Jacob Avalos, recognized defendant and knew he was wanted on two felony warrants. Officer Adrian Bonilla, who was driving, turned the patrol car around and followed defendant as he went north on Concord Street.

The officers saw defendant turn right at the next corner, 8th Street. They pulled up next to him at 3310 8th Street, a private residence with a gated fence. They ordered him to stop, but he jumped over the fence and ran behind the house while holding his waistband.

The officers got out of the patrol car and went to the rear of the house, where they found defendant partially hidden behind a shed. They directed him to raise his hands. He held up a cell phone and said, "Go ahead and shoot me." He refused to lie face down on the ground. Officer Avalos grabbed his arm and tried to force him to the ground, but defendant freed his arm and reached for his waistband. Officer Bonilla grabbed his other arm and both officers tried to wrestle him to the ground. Defendant continued to resist. He said, "I live here. This is my house. What are you guys doing to me? Let me go. Let

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

2

me fucking go."[3]  During the struggle, a .380 semi-automatic Colt handgun fell from defendant's waistband.  Fearing that defendant could have another concealed weapon, Bonilla hit him in the face.  After he was handcuffed, a Glock 9 millimeter handgun and Smith & Wesson magazine were found in his shorts.  Both handguns were loaded.

Defendant was charged with two counts of possession of a firearm near a school (§ 626.9, subd. (b)), and one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)).  He was charged with committing the offenses while on bail (§ 12022.1), and with having a prior strike and prison terms (§§ 667, subds. (b)-(j), 1170.12, 667.5, subd. (b)).

At trial, Bonilla and Avalos testified to the events preceding the arrest.  Bonilla explained the arrest occurred at 3310 8th Street, which is "across the street" from the rear of the Resurrection Church and Resurrection School (church property).  The entrance to the church property is on Opal Street, one block north of 8th Street.

The prosecution introduced a satellite photograph (exhibit 1), which provided an aerial view of the area where the arrest occurred.  According to the testimony of Detective Martin Williams, the church property is bordered by Opal Street to the north, and 8th Street to the south.  He explained that the southern or rear boundary of the church property runs east along 8th Street, from a starting point that is 605.1 feet east of the southwest corner of Concord and 8th Streets.  The western half of the church property contains a sanctuary and parking area.  The eastern half contains a playground (which Williams marked with a circle on exhibit 1) and school classrooms (although, as Williams explained, the school classrooms are not shown in exhibit 1).

Avalos testified that when he first spotted defendant on Concord Street, it was 3:28 p.m.  School had just been dismissed, and defendant walked past "several students."  There were "numerous kids around the neighborhood."

At the close of the prosecution's evidence, defendant moved to dismiss all counts based on insufficient evidence.  As to section 626.9, which prohibits possession of a

---

[3] Defendant's statements were admitted without objection at trial.  The admissibility of the statements is not challenged on appeal.

3

firearm in a school zone, defendant argued there was insufficient evidence that he knew or reasonably should have known there was a school in the area. There was evidence of a lot of "kids" in the area, but their presence at 3:30 p.m. would not put someone on notice that they were within 1,000 feet of a school. Defendant argued the case law does not explain what constitutes the grounds of a school, and there was no evidence the Resurrection School grounds commenced at a point 605 feet east of the southwest corner of Concord and 8th Street. At most, the evidence showed the Resurrection Church grounds commenced at a point 605 feet east of that corner. The west side of the church property was used as a parking area, and there was no evidence the parking area was used by the school. Nor was there evidence of school crossing signs or school zone signs to indicate the existence of a school. The trial court denied the motion.

In closing argument, the prosecutor argued that when defendant ran east on 8th Street, he ran "all the way to here" (referring to 3310 8th Street), and was "well inside 600, 500, maybe 400 feet" of the school. He argued defendant "reasonably should have known he was near a school," because it encompasses "half the block [and] is right in front of him." Also, the "kids are out." "We all know what a school is; includes the entire area of the school. Includes the parking lot, includes the buildings . . . [E]verything is the grounds."

Defense counsel argued the evidence failed to show defendant was within 1,000 feet of a school. She argued there was no evidence the church parking area was part of the school. She asserted that defendant had no reason to know there was a school nearby.

As to section 626.9, the jury was instructed: "The defendant is charged in counts 1 and 2 with unlawfully possessing a firearm near a school, in violation of Penal Code section 626.9(b) and (f)(2)(B). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] One: The defendant possessed a firearm in a school zone; [¶] Two: The defendant knew that he possessed the firearm; and [¶] Three: The defendant knew or reasonably should have known that he was within a school zone. [¶] A 'school zone' means an area in, or on the grounds of a public or private school providing

4

instruction in kindergarten or grades [1] through 12, inclusive, or within a distance of 1,000 feet from the grounds of a public or private school."

The jury returned a guilty verdict on all counts. Defendant moved for a new trial, which the court denied. The court imposed a 12-year sentence and entered judgment. This timely appeal followed.

## DISCUSSION

### I

Section 626.9, the "Gun-Free School Zone Act," prohibits the possession of "a firearm in a place that the person knows, or reasonably should know, is a school zone . . . ." (§ 626.9, subd. (b).) As defined by the statute, a "school zone" means the "area in, or on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive, or within a distance of 1,000 feet from the grounds of the public or private school." (§ 626.9, subd. (e)(1).)

Defendant argues the evidence is insufficient to show that he knowingly possessed a firearm "within a distance of 1,000 feet from the grounds of [a] private school." (§ 626.9, subd. (e)(1).) We conclude the convictions are supported by substantial evidence.

In reviewing a claim of insufficient evidence, the issue "'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) To determine whether there was substantial evidence to support the judgment, we resolve all conflicts and draw all reasonable inferences in its support. (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 528–529.) 'Substantial' evidence is that which is '"of ponderable legal significance . . . reasonable in nature, credible, and of solid value."' (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)" (*People v. Mackey* (2015) 233 Cal.App.4th 32, 120–121.)

*People v. Mejia* (1999) 72 Cal.App.4th 1269 (*Mejia*) is instructive. In *Mejia*, police spotted the defendant (Mejia) in a car that was illegally stopped on the wrong side

5

of the road. (*Id.* at p. 1271.) Police initiated a traffic stop, but Mejia jumped from the vehicle and ran with a gun in his hand. He was arrested and charged with a violation of section 626.9. The evidence at trial showed there was a 1,000-foot distance from the perimeter of the school to the center of the road where the car was stopped. (*Ibid.*) Mejia conceded that his car (or at least part of his car) was within 1,000 feet of a school when the officers first saw him. (*Ibid.*) During deliberations, the jury asked the trial court the following questions: "'Does it matter where the gun is in the car, where the person is in the car, where the car is. Could part of the car be inside 1,000 ft., and part of the car be outside 1,000 ft.; if so where is the possession?'" (*Ibid.*) In response, the trial court told the jury "that it did not matter where within the car, defendant or the gun was located, as long as the jury determined at least part of the car was within the 1,000-foot perimeter." (*Ibid.*) The jury found Mejia guilty. On appeal, he argued the trial court had erred in its response to the jury's question. The appellate court rejected this contention and affirmed the conviction.

As in *Mejia*, we conclude it is not necessary to determine the exact distance between defendant and the school, so long as the evidence supports a reasonable inference that he was within 1,000 feet of the school. The record contains substantial evidence to support that inference. The testimony by the arresting officers (Bonilla testified that defendant was "across the street" from the school), coupled with the aerial photograph (exhibit 1) and measurement taken by Williams, supports a reasonable inference that when defendant ran to 3310 8th Street, he was well within 1,000 feet of the school.

Whether defendant knew or reasonably should have known of the existence of the school on 8th Street is a question of fact. According to Officer Avalos, defendant was known to frequent the area and was wanted by Hollenbeck officers on two felony warrants. Defendant's spontaneous statements—"I live here. This is my house."—support the inference that he was at least familiar with, if not a resident of, the neighborhood where he was arrested. The officers saw defendant walk past several

6

students, which is at least some evidence of the presence of a school.  It was up to the jury to determine its weight.

We conclude the jury was entitled to find that defendant knew or reasonably should have known there was a school across the street from the house where he claimed to live.  The evidence, viewed in the light most favorable to the judgment, is sufficient to allow a rational trier of fact to find beyond a reasonable doubt that defendant knowingly possessed a firearm within 1,000 feet of the grounds of a school.


II

Defendant contends that section 626.9 should be invalidated as unconstitutionally vague because it purports to punish the possession of a firearm within 1,000 feet of the grounds of a school, without defining what constitutes the grounds of a school.  He argues that where, as here, a private parochial school is housed inside a large church complex, the "1,000 foot radius covers such a large swath of area inside the City of Los Angeles that virtually anyone carrying a gun can be prosecuted under this statute at any time."  He asserts that the "due process clauses of the Fifth and Fourteenth Amendments impose on the state a duty to ensure that its penal statutes define the punishable conduct 'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' (*Kolender v. Lawson* [(1983)] 461 U.S. [352,] 357 [(*Kolender*)] . . . .)"

In *Kolender*, a California vagrancy statute was declared unconstitutional because it authorized the arrest of suspects who failed to provide "'credible and reliable' identification and to account for their presence" during *Terry* encounters.  (461 U.S. at p. 353, citing *Terry v. Ohio* (1968) 392 U.S. 1 [reasonable suspicion of criminal activity based on articulable facts permits brief detention for limited questioning and brief frisk of suspect for officer safety].)  The Supreme Court explained that "[b]y defining as a crime the failure to respond to requests for personal information during a *Terry* encounter, and by permitting arrests upon commission of that crime, California attempts in this statute to compel what may not be compelled under the Constitution.  Even if [the vagrancy

7

statute] were not unconstitutionally vague, the Fourth Amendment would prohibit its enforcement." (461 U.S. at p. 369; see *Papachristou v. City of Jacksonville* (1972) 405 U.S. 156, 164 [vagrancy statute unlawfully prohibited acts so benign that they "might implicate unemployed pillars of the community who have married rich wives" or "many members of golf clubs and city clubs"].) An arrest made without probable cause to believe that a crime has been committed is a violation of due process. "We allow our police to make arrests only on 'probable cause,' a Fourth and Fourteenth Amendment standard applicable to the States as well as to the Federal Government." (*Papachristou, supra*, at p. 169.)

Unlike vagrancy statutes, firearms statutes target conduct that cannot be easily mistaken for non-criminal behavior. The violation of a weapons statute is objectively verifiable. (See, e.g., *People v. Reed* (2006) 38 Cal.4th 1224, 1230 [California allows multiple convictions of separate weapons offenses: possessing a firearm by a felon, carrying a concealed firearm, and carrying a loaded firearm in a public place].)

Given the presumptive validity of statutes, courts look for an interpretation that supports the constitutionality of the challenged legislation. (*United States v. National Dairy Products Corp.* (1963) 372 U.S. 29 (*National Dairy*).) Courts do not determine whether a statute is unconstitutionally vague "in the abstract." (*Id.* at p. 32.) "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. [Citation.] In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged. [Citation.]" (*Id.* at pp. 32–33.)

Because the evidence showed that defendant's actions were well within the conduct prohibited by section 626.9, he has not shown that the statute is unconstitutionally vague. (*Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 492.) His argument that it might be difficult in another case to ascertain the location of a school does not automatically invalidate the statute. (See *National Dairy, supra*, 372 U.S. at p. 32.) In considering his facial challenge, "[w]e are not obliged to '. . . consider every

8

conceivable situation which might arise under the language of the statute . . . ' (*In re Cregler* (1961) 56 Cal.2d 308, 313) . . . ." (*Bowland* at p. 492.)

III

Defendant denied possession of the handguns, which he claimed were simply lying on the ground. He filed a *Pitchess* motion seeking discovery of police personnel records for Officers Bonilla and Avalos. (*Pitchess*, *supra*, 11 Cal.3d 531.) As to each officer, he requested complaints and allegations regarding "aggressive behavior, violence, excessive force, . . . racial bias, gender bias, ethnic bias, sexual orientation bias, coercive conduct, violation of constitutional rights, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure, false arrest, perjury, dishonesty, writing of false police reports, . . . planting of evidence, false or misleading internal reports . . . , and any other evidence of misconduct amounting to moral turpitude within the meaning of *People v. Wheeler* (1992) 4 Cal.4th 284 . . . ."

The trial court granted the motion and conducted an in camera hearing at which it examined the records provided by the police department. The court found there was no discoverable material subject to disclosure. At defendant's request, we ordered the court reporter to prepare and file a sealed transcript of that hearing. We have reviewed the record under seal and independently conclude that the trial court did not abuse its discretion in its ruling on the *Pitchess* motion. (See *People v. Prince* (2007) 40 Cal.4th 1179, 1286.)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.