[No. H001935. Sixth Dist., Apr. 29, 1987.]

HENRY FRANKLIN BROOKS, Plaintiff and Respondent, v.
COUNTY OF SANTA CLARA et al., Defendants and Appellants.

COUNSEL

Donald L. Clark, County Counsel, and Donald J. Fallon, Deputy County Counsel, for Defendants and Appellants.

John Kazubowski and Hamrick, Hoffman, Guillot & Kazubowski for Plaintiff and Respondent.

OPINION

AGLIANO, P. J.—Santa Clara County and certain of its officials (collectively the county) appeal from a judgment which declares that honorably discharged military veterans who sell food owned by them either by "itinerate . . . sales" or from fixed locations, and either personally or through agents or employees, are exempt under Business and Professions Code section 16102 from license fees including (without limitation) public health license and permit fees imposed by the county under provisions of the Health and Safety Code.

The facts are undisputed; the issues resolved by the trial court were purely legal. Upon independent analysis we agree with the result the trial court reached. Therefore we affirm.

Plaintiff Henry Franklin Brooks is an honorably discharged soldier who at relevant times operated a nut vending business in Santa Clara County. It appears that he initially conducted his business from a motor vehicle of some kind.

For some years Brooks enjoyed an exemption from county license fees for his business by virtue of Business and Professions Code section 16102, which provides that "[e]very soldier, sailor or marine of the United States who has received an honorable discharge or a release from active duty under honorable conditions from such service may hawk, peddle and vend any goods, wares or merchandise owned by him, except spirituous, malt, vinous or other intoxicating liquor, without payment of any license, tax or fee whatsoever, whether municipal, county or State, and the board of supervisors shall issue to such soldier, sailor or marine, without cost, a license therefor."

In 1979 the county enacted an ordinance which required that food vendors, among others, obtain public health permits and licenses for which they would be required to pay specified fees. These requirements were adopted as a means of discharging the county's general duty "to preserve

and protect the public health" (Health & Saf. Code, § 450; cf. *People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484 [204 Cal.Rptr. 897, 683 P.2d 1150]) and its specific duty to enforce "[s]tatutes relating to public health" (Health & Saf. Code, § 452, subd. (c)). So far as relevant to food vendors, the pertinent public-health statutes are (until Jan. 1, 1985) the former California Restaurant Act (Health & Saf. Code, former § 28520 et seq.) and (since Jan. 1, 1985) the California Uniform Retail Food Facilities Law (Health & Saf. Code, § 27500 et seq.). The current law entrusts "[p]rimary" enforcement responsibility to "local health agencies" (*id.* at § 27505) and expressly provides that "[a] food facility shall not be open for business without a valid permit. ... [¶] Any fee for the permit and related services shall be determined by the local governing body. Fees shall be sufficient to cover the actual expenses of administering and enforcing this program. All moneys collected as fees shall be expended in carrying out the provisions of this chapter." (*Id.* at § 27551.) The pre-January 1, 1985, statute contained similar provisions. (*Id.* at former §§ 28690, 28693, 28866.)

For direct authority to charge fees for the health permits and licenses in issue here, the county relied on Health and Safety Code section 510, which provides that "[w]henever the governing body of any city, county, or city and county determines that the expenses of its health officer in the enforcement of any statute, order, quarantine, rule or regulation prescribed by a state officer or department relating to public health, which either requires or authorizes the health officer to perform specified acts, are not met by any fees prescribed by the state, such governing body may adopt an ordinance or a resolution prescribing such fees as will pay the reasonable expenses of such officer incurred in such enforcement. The schedule of fees prescribed by ordinance or resolution of the governing body shall be applicable in the area in which the health officer enforces any statute, order, quarantine, rule or regulation prescribed by a state health officer or department relating to public health."

Prior to 1984 the county issued a health permit and license to Brooks without payment of fees, but in 1984 the county took the position that the section 16102 exemption does not extend to fees authorized by section 510.

When the county refused to renew Brooks's health permit and license without a fee, and threatened to prosecute him for selling nuts without the health permit and license, Brooks filed this action for declaratory and injunctive relief. He obtained a temporary restraining order and the parties then stipulated to a preliminary injunction. Subsequently Brooks amended his complaint to state a class action in behalf of other veterans similarly situated. The class was duly certified.

The pleadings framed only the issue whether a license or permit fee authorized by section 510 is subject to the veterans' exemption provided by Business and Professions Code section 16102. While the suit was pending, it developed that Brooks was selling nuts not only from a vehicle but also from at least one open food stand in a fixed location, and not only personally but also through his son and daughter, and possibly other agents and employees, who acted for Brooks. The county took the position that the section 16102 exemption would not in any event extend to sales from fixed locations or to sales by anyone other than a qualified veteran himself or herself. These new issues were treated by the parties and by the trial court as properly before that court for determination.

In due course the parties filed cross-motions for summary judgment, stipulating that there was no factual dispute. The trial court entered judgment for Brooks, determining (insofar as relevant to this appeal) (1) that the section 16102 exemption does apply to license and permit fees imposed pursuant to Health and Safety Code section 510; (2) that the exemption applies to sales both from itinerant facilities and from fixed locations; (3) that the exemption is a "personal privilege" of the veteran but nevertheless extends to sales operations "by the agents and employees of a veteran ... on behalf of the veteran"; and (4) that Brooks was entitled to recover $13,375.50 as attorney fees under Code of Civil Procedure section 1021.5.

On appeal the county attacks each of the first three enumerated conclusions, and argues that the attorney fee award must be stricken or recalculated depending on the conclusion this court reaches.

We conclude that the language, context, and history of section 16102 all support the trial court's conclusions. We cannot rewrite the statute; contentions that the veterans' exemption should be narrower must be addressed to the Legislature rather than to the courts.

1. *Health and Safety Code section 510.*

■ The county argues that Business and Professions Code section 16102 does not extend to fees charged as a means of cost recovery under Health and Safety Code section 510.

Brooks replies that the breadth of the language of section 16102 makes clear that the exemption includes fees imposed under section 510.

■ Both parties rely on the general rule that a specific statutory provision "should be construed with reference to the entire statutory system of which it is a part, in such a way that the various elements of the overall scheme

are harmonized. [Citation.]" (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081]; cf. *People* v. *Shirokow* (1980) 26 Cal.3d 301, 307 [134 Cal.Rptr. 630, 556 P.2d 1081].)

Section 16102 is one of a series of Business and Professions Code provisions for business licensing at the local level. Sections 16100 through 16104 provide, more specifically, for licensing by counties: Section 16100 authorizes general business licensing by boards of supervisors "in the exercise of their police powers, and for the purpose of regulation . . . ." Section 16101 permits counties to license "individuals acting as hawkers, itinerant peddlers or itinerant vendors" "for the purpose of revenue." Sections 16103 and 16104 state exemptions not relevant here.

The progenitor of sections 16100, 16102, and 16103 was Political Code section 3366, added to the California statutes in 1901, which empowered both counties and incorporated cities to license businesses for the purpose of regulation and "to fix the rates of license tax upon the same." (Stats. 1901, ch. 209, § 1, pp. 635-636.) Section 3366 contained a veterans' exemption which was quite similar to that now embodied in section 16102, except that it required that the veteran be "unable to obtain a livelihood by manual labor" and did not require that the goods to be sold be "owned by" the veteran. (*Ibid.*) The veterans' exemption in section 3366 was substantially amended several times thereafter. (Stats. 1915, ch. 436, § 1, p. 723; Stats. 1917, ch. 188, § 1, pp. 279-280; Stats. 1921, ch. 164, § 1, p. 163; Stats. 1935, ch. 138, § 1, pp. 487-488.) A provision limited to counties, also embodying the substance of what is now sections 16100, 16102, and 16103 and to that extent surficially redundant of section 3366, was added to the Political Code in 1929 as section 4041.14. (Stats. 1929, ch. 755, § 15, p. 1457.) The veterans' exemption in section 4041.14 was even more closely similar to present section 16102, although (like section 3366) it did not require that the veteran own the goods. (*Ibid.*) The substance of section 16101, limited to counties and authorizing limited licensing of itinerant sellers "for the purpose of revenue," was not added to the codes until 1935, when it was inserted by amendment to section 4041.14. (Stats. 1935, ch. 138, § 2, p. 489.) In 1941 the licensing provisions for cities and counties were separated and moved to the Business and Professions Code, as sections 16000 through 16103 (Stats. 1941, ch. 61, §§ 1, 2, pp. 718-721), and in the same session section 16102 was amended to add the requirement that the goods sold be "owned by" the veteran (Stats. 1941, ch. 646, § 2, p. 2101). None of the relevant sections has been amended since 1941.

Patently the thrust of section 16102 is not to exempt veterans from local *regulation,* but rather to enable specified veterans to engage in specified kinds of business without being required to *pay.* The last several words of the

section make clear the Legislature's assumption that the veteran must have a license, but also its intent that he or she should receive it "without cost," consistent with the antecedent provision that the veteran should be permitted to do business "without payment of any license, tax or fee whatsoever . . . ." These provisions have been part of the veterans' exemption since 1901. The anomalous comma between the words "license" and "tax" appears to us to be insignificant: There was no comma in the phrase in the 1901 enactment, and we assume that insertion of the comma in section 4041.14, as enacted in 1929, was inadvertent.

Section 510 is one of a series of provisions of the Health and Safety Code which make clear that counties and cities are obliged to protect the public health and for that purpose to enforce state public-health statutes among other things. The current food-service statute (the California Uniform Retail Food Facilities Law) expressly provides for local enforcement, imposes a permit requirement to be locally administered, and authorizes permit fees sufficient to cover the administrative cost (Health & Saf. Code, §§ 27505, 27551). The county might have rationalized its permit fee under either section 510 or the food-service statute itself.

As we have noted, veterans are not exempt from county *regulation*. We entertain no doubt that Brooks could be required to obtain a health license and permit as a condition of doing business, and for that purpose to meet whatever reasonable regulatory requirements might be applicable to his operation. The trial court specified that the section 16102 exemption "does not exempt such veterans from the requirement of securing a Food Permit"; Brooks has not questioned this conclusion. Indeed, Brooks had applied for and received a health license and permit, without fee, in 1982. The narrow question is whether, in light of section 16102, Brooks and other similarly situated veterans could be required to *pay a fee* for the health license and permit.

The county submits that section 16102 must be read in the context of the chapter in which it appears as illuminated by legislative history, and that such an analysis demonstrates that the exemption extends only to fees charged for licenses issued "in the exercise of [the counties'] police powers, and for the purpose of regulation" or "for the purpose of revenue," and should not be construed to apply to what the county calls "cost recovery fees for enforcement of state health food laws under . . . section 510." According to the county, "[t]he permit fees challenged herein were not imposed incident to any substantive regulations promulgated by the county—they were imposed incident to state health food laws and regulations . . . . Nor were they imposed in order to generate revenue for the county—they were imposed in order to recover county costs for the enforcement of state health food laws and regulations."

The county's argument appears to focus on section 16102's reference to a license (inferably the license expressly authorized by section 16100) and to disregard its predominant and much broader provision for exemption from fees. The county cannot avoid the plain meaning of 16102, which is that a qualified veteran is entitled to engage in the described business "without payment of any license, tax or fee whatsoever, whether municipal, county or State." The placement of the exemption is not dispositive: If, as we conclude, the Legislature intended to exempt qualified veterans from *any* fee or tax for doing a specified kind of business, then the Business and Professions Code is an entirely appropriate place for such a provision to appear. Nor are we impressed by the county's argument, based on an opinion of the Attorney General (14 Ops.Cal.Atty.Gen. 226 (1949)), that section 16102 cannot apply to a fee related to enforcement of *state* rather than *local* law: The questions to which the Attorney General responded focused in pertinent part upon the question whether section 16102 applied to *cities* as well as counties; the opinion cannot be construed to reach the question whether a county's fee for a county permit, required to implement a state health statute, is subject to the section 16102 exemption. Whether regarded as a "county fee" or a "state fee," the fee in question comes squarely within the plain language of section 16102.

Accordingly we conclude that Brooks, and similarly situated veterans, would be exempt from the health license and permit fee so long as they otherwise met the requirements of section 16102.

## 2. *Fixed locations.*

■ The county next argues that section 16102, which in terms exempts only veterans who "hawk, peddle and vend," does not apply to sales from fixed locations, and therefore that neither Brooks nor other similarly situated veterans are exempt from license fees for sales from booths or stands on permanent sites. To support this contention the county relies on another opinion of the Attorney General and on the wording of section 16101.

The Attorney General's opinion (3 Ops.Cal.Atty.Gen. 195 (1944)) responded to a county's question whether a qualified veteran who was an "itinerant" sign painter was entitled to the section 16102 exemption from a local license fee imposed upon sign painters. The Attorney General concluded that "the words 'hawk, peddle and vend' are solely referable to some type or manner of selling," that the license fee in question "is imposed upon the occupation of painting and constructing advertising display, and is not directed to the sale of the finished product," and therefore that the veteran, "even though itinerant and without a fixed place of business," was not entitled to the exemption. (*Id.* at pp. 197-198.) In a passage not appar-

ently essential to his response to the question asked, the Attorney General added the language on which the county relies in this case: "Under statutes empowering municipalities to license 'hawkers' and 'peddlers,' a 'peddler' in ordinary, customary and usual meaning is one who travels about selling wares which he carries with him, while a 'hawker' differs from a peddler only in that he cries his wares or exhibits them for sale. [Citation.] Hawking and peddling connote simultaneous delivery with a sale; thus solicitation by samples without contemporaneous delivery has been held not to come within their definition. [Citations.] 'Vend' is, of course, a word which in its broadest sense includes all manner of selling. When used, however, in conjunction with the words 'hawk' and 'vend', the rule of statutory interpretation known as *noscitur a sociis* is applicable. Under this rule, general and specific words capable of analogous meaning, when associated together, take color from each other, so that the general words are restricted to a sense analogous to less general words. [Citations.] Applying the doctrine of *noscitur a sociis,* a New Jersey act providing for the issuance of free licenses by the county clerk to honorably discharged soldiers to 'hawk, peddle and vend' goods and merchandise, was held to give no right to the holder of such a license to sell his wares at a fixed stand in disregard of a valid municipal ordinance requiring a local license therefor. [Citation.] A similar interpretation of the word 'vend' as used in sections 3366 and 4041.14 of the Political Code has been expressed in a former opinion of this office. [Citation.] According to this opinion, the term 'vend' 'cannot be interpreted as authorizing one to carry on a regular business at an established or fixed place of business without paying for any license necessary for the conduct of such operation.' " (*Id.* at pp. 196-197.)

 The county concludes that "the term 'hawk, peddle and vend' describes, and is limited to, itinerant sales." It suggests that this conclusion is "reinforced" by a comparison of sections 16101 and 16102. Section 16101 provides that "[t]he boards of supervisors in their respective counties may for the purpose of revenue license individuals acting as hawkers, itinerant peddlers or itinerant vendors, other than merchants having a fixed place of business in the county, their employees, and farmers selling farm products produced by them." The county's position appears to be that the exclusion of "merchants having a fixed place of business" from the class of persons from whom license fees may be required solely "for the purpose of revenue" under section 16101 makes clear that the veterans' exemption provided by section 16102 similarly does not extend to veterans who sell from fixed places of business.

The comparison between sections 16101 and 16102 does not compel the conclusion the county seeks. Indeed, it may be taken to support Brooks's position. As we have noted, the substance of section 16101 was first added

to the California statutes in 1935, by insertion into Political Code section 4041.14. The substance of sections 16100 and 16102 had already been on the books for 34 years. In adding the new provision, the Legislature carefully and even redundantly qualified it: "other than merchants having a fixed place of business"; "itinerant peddlers"; "itinerant vendors." But at the same time the Legislature left the comparable terms in the veterans' exemption, as it appeared in the same section 4041.14 and was reiterated in the 1935 chapter, wholly unqualified. It is rational to conclude that the Legislature omitted from the veterans' exemption words which would have expressly limited the exempt activities to those which were "itinerant" and not undertaken from "a fixed place of business" because it intended no such limitation.

■ It would follow that the county's reliance on *noscitur a sociis* is misplaced. As a leading commentator points out, "the maxim noscitur a sociis is a mere guide to legislative intent. The rule will not be applied where there is no ambiguity, or to thwart the legislative intent, or to make general words meaningless. The maxim is only an extrinsic aid and should only be used when the clear meaning of the words used in the statute is doubtful." (2A Sutherland, Statutory Construction (4th ed. 1984) § 47.16, p. 161 (fns. omitted); cf. *People* v. *Fields* (1980) 105 Cal.App.3d 341, 344 [164 Cal.Rptr. 336]; *Cal. State Employees' Assn.* v. *Regents of University of California* (1968) 267 Cal.App.2d 667, 670 [73 Cal.Rptr. 449].)

■ In its reply brief the county argues that this court should assign dispositive significance to the fact that the Legislature has not seen fit to amend section 16102 in light of the Attorney General's 1944 opinion: It suggests that the Legislature's inaction is some evidence that the 1944 opinion "does in fact reflect the Legislature's intent." But in each of the cases on which the county relies it was of dispositive significance that the Legislature had taken action upon the statute in question at least twice since publication of the opinion or opinions of the Attorney General. Section 16102 has not been amended since 1941. We are unwilling to infer that the Legislature has been cognizant of the essentially gratuitous discussion of *noscitur a sociis* in the 1944 opinion, and that its failure to take any action whatsoever with respect to section 16102 amounts to an adoption of the Attorney General's position.

As the Attorney General acknowledged in 1944, the word " '[vend]' . . . in its broadest sense includes all manner of selling." (3 Ops.Cal.Atty.Gen., *supra,* p. 197.) We deem the word, as used in section 16102, broad enough to encompass sales from fixed locations.

3. *Personal privilege.*

■ The county relies on unrelated statutes, general texts, and cases from other jurisdictions to support its contention that the section 16102 exemption does not extend to sales made by agents and employees of the veteran.

Once again this is a question of statutory construction, as to which general citations render little or no assistance. Nevertheless this is perhaps the county's strongest argument: It may rationally be doubted that the Legislature would have intended a patriotically inspired exemption to apply to a large organization of retail agents and employees of an individual veteran, or even (as in Brooks's case) to the use of a few agents or employees to conduct the veteran's business at more than one location. It would be an insufficient response to such doubts to suggest that the Legislature would have contemplated, and approved, use of a limited number of agents and employees (perhaps drawn, as in Brooks's case, from the veteran's immediate family) at a single location: There is no practical way, consistent with the language of section 16102, to draw such distinctions. The county's argument is necessarily absolute: The section 16102 exemption, in the county's view, does not extend to agents or employees of any kind.

But once again the county cannot avoid the plain language of section 16102. The section requires that the veteran personally own his inventory, but places no limitation whatsoever upon the manner in which he may "hawk, peddle and vend" it. The use of agents and employees to sell goods has been a well-understood practice throughout commercial history, and surely was within the knowledge (and thus, presumably, the contemplation) of the Legislature. We are unwilling to write the requested limitation into the statute: The county's concerns should be addressed through the legislative process.

### 4. *Attorney fees.*

In this court the county's only challenge to the attorney fee award is linked to its argument on the merits: If and to the extent the judgment is reversed, the attorney fee award should be stricken or reconsidered. Since we affirm on the merits, we shall permit the fee award to stand.

The judgment is affirmed.

Brauer, J., and Capaccioli, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 29, 1987.