EDMUND G. BROWN JR. Attorney General DANIEL G. STONE Deputy Attorney General
THE CALIFORNIA STATE BOARD OF EQUALIZATION has requested an opinion on the following questions:
1. Does Business and Professions Code section 16102, pertaining to the selling activities of certain military veterans, create a general exemption from taxes under the Sales and Use Tax Law?
2. Does the Board of Equalization have authority to promulgate a regulation designating qualified veteran itinerant vendors as consumers of the tangible personal property they offer for sale? *Page 2 
 CONCLUSIONS
1. Business and Professions Code section 16102 exempts qualified veterans from any fees or taxes that must ordinarily be paid to obtain business licenses to engage in those enumerated activities. section 16102 does not establish a general exemption from taxes and has no effect upon state or local sales and use taxes.
2. The Board of Equalization lacks authority to promulgate a regulation designating qualified veteran itinerant vendors as consumers of the tangible personal property they offer for sale.
 ANALYSIS
We are asked to determine whether a statute permitting honorably discharged military veterans to engage in certain activities "without payment of any license, tax or fee whatsoever, whether municipal, county or State,"[1] operates to exempt these veterans from payment of any sales and use taxes that would otherwise attach to their sales transactions conducted under the statute. Secondly, we are asked whether the State Board of Equalization may, for taxation purposes, designate a qualified veteran who is engaged in these enumerated activities — namely, the "hawk[ing], peddl[ing] and vend[ing]" of "any goods, wares or merchandise owned by him"[2] — as a "consumer" of the tangible personal property offered for sale.
Question One: The Scope of the Exemption
The focus of the first question is section 16102 of the Business and Professions Code, which provides:
 Every soldier, sailor or marine of the United States who has received an honorable discharge or a release from active duty under honorable conditions from such service may hawk, peddle and vend any goods, wares or merchandise owned by him, except spirituous, malt, vinous or other intoxicating liquor, without payment of any license, tax or fee whatsoever, whether municipal, county or State, and the board of supervisors shall issue to such soldier, sailor or marine, without cost, a license therefor. *Page 3 
This provision has been on the books since 1941 and has been amended only once, also in 1941. Its predecessor provision, former Political Code section 3366, was enacted in 1901.[3]
In exploring the meaning and effect of section 16102, we apply well established principles of statutory construction. Our fundamental aim "is to determine the Legislature's intent so as to effectuate the law's purpose."[4] We begin our analysis by examining the words used by the Legislature, giving them their usual and ordinary meaning.[5] Further, "[w]e do not construe statutory language in isolation, but rather as a thread in the fabric of the entire statutory scheme of which it is a part."[6]
Here, we think that the plain language of section 16102 provides sufficient clarity and guidance to answer the question presented. Broken down into its component parts, the statute first describes the persons eligible for the exemption as "[e]very soldier, sailor or marine of the United States who has received an honorable discharge or a release from active duty under honorable conditions from such service." It then lists the activities covered by the exemption: a qualified veteran "may hawk, peddle and vend any goods, wares or merchandise owned by him" (with the exception of alcoholic beverages). Next, it describes which of the costs associated with these activities is excused, namely, the "payment of any license, tax or fee whatsoever." And, finally, the statute affirmatively directs counties to provide each qualified veteran with the tangible object and benefit of this exemption; thus, "the board of supervisorsshall issue to such soldier, sailor or marine, without cost, a licensetherefor" — that is, a valid current license permitting the bearer to engage in the enumerated activities.[7] *Page 4 
The statute makes no mention of "sales taxes" or of "use taxes" or of any other government-imposed costs or fees or requirements that might apply.[8] Rather, the sole focus and the exclusive purpose of this provision, by its own terms, is to provide qualified veterans with cost-free licenses to engage in the specified vending, peddling, and hawking of the described goods, wares, or merchandise. And a "license," in turn, is generally understood to mean permission, and the certificate or document evidencing that permission, to engage in conduct that would otherwise not be permitted.[9] State and local sales and use taxes, in contrast, are typically levied on transactions that occur in the course
of a business, and are usually calculated as a percentage of the gross receipts from, or the sale price of, such transactions.[10]
Moreover, a look at section 16102's surrounding provisions — that is, an examination of "the entire statutory scheme of which [section 16102] is a part"[11] — strongly reinforces our conclusion that this exemption pertains only to licensing fees and not to any broader array of taxes, fees, or other charges. section 16102 is found in Part 1 of Division 7 of the Business and Professions Code, which is entitled "Licensing for Revenue and Regulation,"[12] and the provision immediately preceding it (section 16101, also enacted in 1941) authorizes county boards of supervisors to license hawkers, itinerant peddlers, and itinerant vendors.[13] The other neighboring provisions also have *Page 5 
licensing matters as their only subject.[14]
Our interpretation of section 16102 is also consistent with the Court of Appeal's understanding of that provision, as set forth inBrooks v. County of Santa Clara:
 Patently the thrust of section 16102 is not to exempt veterans from local regulation, but rather to enable specified veterans to engage in specified kinds of business without being required to pay. The last several words of the section make clear the Legislature's assumption that the veteran must have a license, but also its intent that he or she should receive it "without cost," consistent with the antecedent provision that the veteran should be permitted to do business "without payment of any license, tax or fee whatsoever. . . ."[15]
We reached the same understanding in our own previous discussion of section 16102:
 . . . For the purpose of revenue, the boards of supervisors may license individuals acting as hawkers, itinerant peddlers or itinerant vendors. (Bus. Prof. Code, sec. 16101.) Section 16102, supra, which specifies the exemption of ex-soldiers from county license fees, reads as follows:
 [Quotation of statute omitted].
 From the clear language of this section it follows that if the ex-serviceman is seeking a license to hawk, peddle and vend goods, wares or merchandise owned by him, he is entitled to its issuance by the board of supervisors without charge; otherwise, in the absence of any *Page 6 
additional exemptions covering other activities, he is subject to the license fee exacted of all who wish to engage in that business or occupation.[16]
Despite these precedents, and notwithstanding the narrow subject matter of the surrounding statutory scheme, some interested parties hold the view that section 16102 should be read to establish a comprehensive immunity from any and all forms of taxes or fees that might apply to the enumerated businesses, including any applicable sales or use taxes. In advancing this argument, they rely principally on the wayward comma that appears in the statute's phrase "without payment of any license, tax or fee whatsoever," and on the Legislature's use of the term "whatsoever" in that phrase. For several reasons, however, we are unpersuaded by this interpretation.
First, we note that the Brooks court specifically addressed and rejected the suggestion that this odd comma in section 16102 should be accorded any meaning, instructing us to disregard it as accidental:
 These provisions have been part of the veterans' exemption since 1901. The anomalous comma between the words "license" and "tax" appears to us to be insignificant: There was no comma in the phrase in the 1901 enactment, and we assume that insertion of the comma in section 4041.14, as enacted in 1929, was inadvertent.[17]
Second, we think that the proffered construction would necessitate our giving the word "license" a very unusual and unlikely usage in this context, ignoring its distinction from the words "tax" and "fee" which follow it. When used as nouns, as they are here, *Page 7 
"tax" and "fee" connote imposed costs or charges.[18] In contrast, the term "license," when used as a noun, means permission to do something, or the certificate evidencing that permission;[19] it would be strange to the point of absurdity for the Legislature to say that a veteran may vend goods "without payment of a license" for that privilege. Rather, we believe that "license," as it is used here, must be understood to be anadjective modifying the nouns "tax" and "fee" to clarify the kinds ofcosts that are excused.[20]
Taking it in the context of the entire statutory scheme, as we must, we see that the whole purpose of section 16102 is to provide veterans with permission to engage in specific enterprises — namely, to peddle, hawk, and vend certain goods, wares, or merchandise — without incurring any of the costs associated with entry into those occupations, and that the exemption operates regardless of whether those entry costs are labeled "fees," or "taxes" (or "licenses"). But section 16102 does not purport even to address, much less to waive taxes on, any ensuing transactions that may occur once the veteran has obtained his or her cost-free license and has begun conducting business in the designated occupation.
Third, we advert again to section 16001, which provides a parallel exemption with respect to city licensing costs, for disabled veterans of specified wars. There is no comma in section 16001's otherwise identical phrase — "without payment of any license tax or fee whatsoever" — a phrase which has been construed as referring to two specific kinds of costs: license taxes and license fees.[21] We agree with the Brooks court that *Page 8 
section 16102 should be interpreted as conveying the same meaning, and that its aberrant comma should be regarded as a mere typographical error. No one has suggested to us any reason why the Legislature would have provided a narrower exemption or a less generous benefit for disabled veterans than for the able-bodied, and we can conceive of none.[22]
Fourth, we observe that our treatment of "license" as an adjective for "tax" and "fee" finds support in the common usage of these terms. The terms "license fee" and "license tax" appear frequently in cases and statutes, and are routinely treated as synonyms describing the cost of acquiring a license.[23]
And, finally, we see nothing in the term "whatsoever" to support a more expansive interpretation of section 16102. "Whatsoever" fits logically within the construction that we, the courts, and the Legislature have given to the exemption, reinforcing the Legislature's intention to exempt any and all costs and charges for business licenses.
For these reasons, we conclude that the sole purpose and effect of Business and Professions Code section 16102 is to exempt qualified veterans from fees or taxes ordinarily paid to obtain licenses to engage in the occupations listed, and to ensure that such licenses be provided to qualified veterans without cost. section 16102 does not establish a general exemption from taxes, and it has no effect upon taxes levied pursuant to the state Sales and Use Tax Law[24]
or the Bradley-Burns Uniform Local Sales and Use *Page 9 
Tax Law.[25]
Question Two: Designating Qualified Veteran Itinerant Vendors asConsumers
The State Board of Equalization was created in 1879 by a constitutional amendment, primarily to ensure that county property tax assessment practices were consistent throughout the state.[26] The Board's responsibilities have expanded over time, and currently include administration of a variety of state taxation programs, including sales and use taxes, property taxes, special taxes, and tax appeals.[27] The Board may adopt regulations to facilitate its fulfillment of these responsibilities.[28]
The Board's rulemaking authority, however, is limited to interpreting and clarifying matters within its jurisdiction as defined by statutes and the Constitution. It has no power to create taxes or to carve out new exemptions. Rather, any regulations that it promulgates must fall within the authority and discretion it derives from either the *Page 10 
Constitution itself or from specific statutory directives enacted by the Legislature.[29]
In Question 2, the Board asks whether it may, pursuant to section 16102 and at the urging of certain veteran itinerant vendors, promulgate a regulation designating such qualified vendors as "consumers" of the tangible personal property they offer for sale, thereby establishing a new tax exemption for that subset of vendors. We conclude that the Board may not promulgate such a regulation. section 16102 is the only provision proffered by the veterans as a basis for the requested regulation, and, in our view, that statute provides no authority for the Board to act in this manner. Given our construction of section 16102 as limited to license fees and license taxes, it follows that the Board could not rely on that statute to create or to implement exemptions or waivers of other kinds of taxes.
In summary, we conclude in response to Question 1 that Business and Professions Code section 16102 exempts qualified veterans from any fees or taxes that must ordinarily be paid to obtain business licenses to engage in those enumerated activities. section 16102 does not establish a general exemption from taxes and has no effect upon state or local sales and use taxes. We conclude in response to Question 2 that the Board of Equalization lacks authority to promulgate a regulation designating qualified veteran itinerant vendors as consumers of the tangible personal property they offer for sale.
[1] Bus. Prof. Code § 16102.
[2] Id.
[3] 1901 Stat. ch. 188, § 1; 1941 Stat. ch. 61, § 1; 1941 Stat. ch. 646, § 2. See Brooks v. Co. of Santa Clara, 191 Cal. App. 3d 750, 755
(1987) (discussing genesis of statute). In 1929, the Legislature enacted Political Code section 4041.14 (1929 Stat. ch. 755, § 15), which is "surficially redundant of section 3366" but limited to counties, and which was also a predecessor to sections 16100 through 16103. (Brooks,191 Cal. App. 3d at 755-756.)
[4] People v. Murphy, 25 Cal. 4th 136, 142 (2001) (citations omitted).
[5] Garcia v. McCutchen, 16 Cal. 4th 469, 476 (1997); Kimmel v. Goland,51 Cal. 3d 202, 208-209 (1990).
[6] Dept. of Alcoh. Bev. Control v. Alcoh. Bev. Control Appeals Bd.,40 Cal. 4th 1, 11 (2006); see Carrisales v. Dept. of Corrects.,21 Cal. 4th 1132, 1135 (1999); Calif. Teachers Assn. v. Governing Bd. ofRialto Unified Sch. Dist., 14 Cal. 4th 627, 642 (1997).
[7] Bus. Prof. Code § 16102 (emphasis added).
[8] The state Sales and Use Tax Law is set forth in Revenue Taxation Code sections 6001 through 7176, while the Bradley-Burns Uniform Local Sales and Use Tax Law is found in sections 7200 through 7212. It should be noted that the Sales and Use Tax Law includes an entire chapter devoted to exemptions. (See Rev. Tax. Code §§ 6351-6423.)
[9] See Black's Law Dictionary 938 (8th ed. 2004), defining "license" as:
 . . . 1. A permission, usu. Revocable, to commit some act that would otherwise be unlawful. . . . 2.
The certificate or document evidencing such permission.
[10] See Rev. Tax. Code §§ 6051 (state sales tax as percent of gross sale receipts); 6201 (state use tax as percent of sales price); 7202(a) (local sales tax as percent of gross sale receipts); 7203 (local use tax as percent of sales price).
[11] Dept. of Alcoh. Bev. Control, 40 Cal. 4th at 11.
[12] Bus. Prof. Code §§ 16000-16545.
[13] Bus. Prof. Code § 16101 provides:
 The boards of supervisors in their respective counties may for the purpose of revenue license individuals acting as hawkers, itinerant peddlers or itinerant vendors, other than merchants having a fixed place of business in the county, their employees, and farmers selling farm products produced by them.
[14] See, e.g., Bus. Prof. Code § 16000 (permitting incorporated cities to "license any kind of business not prohibited by law"); §§ 16000.5-16000.7 and 16100.5-16100.7 (prohibiting licensing requirements and license fees for café musicians and for certain federally chartered veterans' organizations); § 16001 (providing no-cost licenses to disabled veterans of specified wars for certain hawking, peddling, and vending, and for distributing circulars); §§ 16002 and 16103 (prohibiting collection of license fees from commercial travelers engaged in wholesale dealings); and § 16104 (setting maximum license fees for sheep businesses).
[15] 191 Cal. App. 3d at 755-756.
[16] 3 Ops.Cal.Atty.Gen. 195, 196 (1944) (emphasis added). Seealso 14 Ops.Cal.Atty.Gen. 226, 226-227 (1949) (describing nearly identical provision relating to cities and to disabled veterans):
 The provisions of section 16001 may briefly be summarized as providing for the issuance of licenses by the legislative bodies of incorporated cities to specified veterans who are physically unable to obtain a livelihood by manual labor and who desire to either distribute circulars [or] peddle merchandise (other than intoxicants) owned by them. It is specifically provided that the licenses "shall issue" to such veterans "without cost" and that the veterans may engage in the aforesaid activities "without payment of any license tax or fee whatsoever, whether municipal, county or State."
[17] Brooks, 191 Cal. App. 3d at 756.
[18] See Black's Law Dictionary at 1496 (defining "tax" as "[a] monetary charge imposed by the government") and 647 (defining "fee" as "[a] charge for labor or services").
[19] See id. at 938; see also Webster's 3d New Internat. Dict. 1304 (2002) (defining "license" as "permission to act . . .").
[20] Furthermore, if the Legislature had intended this phrase to be read as a series of three like concepts, that intent could have been signaled by inserting another comma, often called a "serial comma," between "tax" and "or," to separate the penultimate from the ultimate in a list. (See, e.g., Strunk White, The Elements of Style (4th ed., 2000) at 2, "Elementary Rules of Usage," Rule 2 ("In a series of three or more terms with a single conjunction, use a comma after each term except the last").) Although use of the serial comma is not universally embraced, the absence of a serial comma in section 16102 lends further support to our reading of "license" as an adjective rather than a serial noun.
[21] See 2008 Stat. ch. 435, (Legislative Counsel's Digest describing existing law as entitling every qualified disabled veteran "to obtain a license to distribute circulars and sell any goods, other than alcoholic beverages, without payment of applicable license taxes or fees."). Seealso 23 Ops.Cal.Atty.Gen. 149, 150 (1954).
[22] In 2008, the Legislature added Business and Professions Code section 16001.7, which exempts "honorably discharged or honorably relieved" U.S. military veterans from "any business license fee, whether municipal, county, or state," (emphasis added) for the enumerated occupations without any requirement that the veterans be disabled. This provision was enacted to "reconcile[] the issue of physical disability between city and county fee waivers for honorably discharged veterans." (Bill Analysis, Assembly 1952, Sen. Comm. On Business, Professions, and Economic Development, p. 2 (June 16, 2008). We think that this very recent choice of the term "business license fee" in section 16001.7 demonstrates that the Legislature, too, construes section 16102's exemption as extending only to the cost of obtaining a license.
[23] E.g., Bus. Prof. Code § 16104 ("No license requiring a fee
greater than 3 cents ($0.03) per head shall be imposed . . . nor shall any such license tax be applicable . . .") (emphasis added). See Black'sLaw Dictionary at 940 (defining "license fee" as "A monetary charge imposed by a governmental authority for the privilege of pursuing a particular occupation, business, or activity. . . . Also termed licensetax.").
[24] Rev. Tax. Code §§ 6001-7176.
[25] Rev. Tax. Code §§ 7200-7212.
[26] See Cal. Const. art. XIII, §§ 17-19. See also, e.g., Govt. Code §§15602 et seq.
[27] See http://www.boe.ca.gov/about.htm. See also Rev. Tax Code §401.5. In Hahn v. State Bd. of Equalization, 73 Cal. App. 4th 985,990 n. 4 (1999), the Board's functions were described as follows:
 The Board of Equalization was created in 1879, and originally charged with the responsibility for ensuring that county property tax assessment practices were equal and uniform throughout the state. That charge has been expanded over the years and, among other things, the Board now administers California's property tax programs. (http:// www.boe.ca.gov/about.htm.) To that end, subdivisions (c) and (e) of section 15606 of the Government Code direct the Board to "[p]rescribe rules and regulations to govern . . . assessors when assessing" and to "[p]repare and issue instructions to assessors designed to promote uniformity throughout the state and its local taxing jurisdictions in the assessment of property for the purposes of taxation. . . ." Section 15607 of the Government Code directs the Board to "summon assessors to meet with it or its duly authorized representatives at least once annually . . . to study or discuss problems of administration of assessment and taxation laws and to promote uniformity of procedure in tax matters throughout the state."
[28] See Govt. Code §§ 15606(c), 15606(f), 15606(g), 15606.5.
[29] See Carmel Valley Fire Protec. Dist. v. State of Calif.,25 Cal. 4th 287, 299-300 (2001); Agnew v. State Bd. of Equalization,21 Cal. 4th 310, 321 (1999); Ontario Community Found., Inc. v. State Bd.of Equalization, 35 Cal. 3d 811, 816-817 (1984); Co. of San Diego v.Bowen, 166 Cal. App. 4th 501, 508 (2008). See also Govt. Code §§11342.1, 11342.2. *Page 1