[Crim. No. 22981. First Dist., Div. One. Nov. 24, 1981.]

In re JOHN ROBERT PANOS on Habeas Corpus.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Michael S. McCormick, Deputy State Public Defender, for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Granucci and Christopher J. Wei, Deputy Attorneys General, for Respondent.

OPINION

**RACANELLI, P. J.**—Petitioner is presently confined in the state prison serving concurrent sentences imposed under the Indeterminate Sentence Law following his convictions of first degree robbery and aggravated assault in San Bernardino County and first degree robbery in Los Angeles County. In each case a finding was made that defendant personally used a firearm during the commission of the charged offense within the meaning of Penal Code[1] section 12022.5; an allegation in the San Bernardino proceedings that defendant had suffered a prior felony conviction within the meaning of former section 3024 was found to be true. On October 13, 1978, the Community Release Board (now Board of Prison Terms, hereafter Board) recomputed petitioner's term at six years under the provisions of the determinate sentencing law (§ 1170.2, subd. (a)) consisting of the following components: three years middle term for the San Bernardino robbery conviction; two years enhancement for use of a firearm (§ 12022.5) and an additional year for the prior felony conviction (§ 667.5, subd. (b)). Based upon the recomputed term the Board ultimately fixed April 8, 1982, as petitioner's minimum parole release date. In his habeas corpus petition filed below, petitioner alleged that since he had remained free of "prison custody" for a period of five years within the meaning of section 667.5, subdivision (b),[2] the Board lacked jurisdiction to include a one-year enhancement attributable to the prior separate prison term served as a result of his 1969 felony convictions in Orange County. Petitioner renews his argument that his temporary confinement in state prison pursuant to an order of parole suspension did not constitute prison custody under the relevant provisions of the statute. We agree.

The underlying factual circumstances are not in dispute: Petitioner was imprisoned on the Orange County felony convictions on November 18, 1969, and thereafter paroled on September 10, 1971, with a tentative discharge date of August 18, 1974.

On November 15, 1973, as a result of petitioner's arrests for reckless driving and aggravated assault, the Board ordered suspension of his parole and his return to prison pending revocation proceedings. (See

---

[1]All statutory references are to this code.

[2]Subdivision (b) provides in pertinent part that no additional term shall be imposed thereunder "for any prison term served prior to a period of five years in which defendant remained free of ... prison custody ...."

§ 3060, as amended in 1977.)[3] At the revocation hearing conducted on March 7, 1974, petitioner admitted the alleged parole violation which the Board determined was not sufficiently serious to warrant revocation.

On April 1, 1974, petitioner was released, subject to an approved parole plan; he remained on parole until his discharge on September 11, 1975.

The new offenses underlying petitioner's present imprisonment were committed in June 1977.

Relying on *In re Hawkins* (1980) 103 Cal.App.3d 621 [163 Cal.Rptr. 201], the trial court denied relief based upon its conclusion that the period of confinement in connection with the order of suspension constituted a form of punishment occurring within a five year period preceding commission of the subsequent "new offenses." Petitioner sought habeas relief in this court which was summarily denied on May 5, 1981. Thereafter, petitioner filed a similar application in the California Supreme Court which issued its order to show cause on June 10, 1981, returnable before this court.

I

■ As noted, under the provisions of section 667.5, subdivision (b), a defendant receiving a prison sentence on a new offense is subject to the consecutive imposition of a one-year term for each prior separate prison term served for any felony unless during the preceding five-year period he remained free of "prison custody." The apparent legislative purpose underlying the statute is to provide an additional punishment component "for prior imprisoned recidivist offenders." (*People* v. *Mathews* (1980) 102 Cal.App.3d 704, 711 [162 Cal.Rptr. 615]; see also *People* v. *Gaines* (1980) 112 Cal.App.3d 508, 516 [169 Cal.Rptr. 381], mod. 113 Cal.App.3d 358a; *People* v. *Espinoza* (1979) 99 Cal.App.3d 59, 74 [159 Cal.Rptr. 894].)

The pivotal phrase "prison custody" is defined in section 667.5, subdivision (d), in the following manner: "For the purposes of this section the defendant shall be deemed to remain in prison custody for an offense until the official discharge from such custody or until release on parole

---

[3]The record is unclear as to the reason petitioner was transferred to prison instead of temporary detention in a local facility. (See Cal. Admin. Code, tit. 15, § 2605.)

whichever first occurs including any time during which the defendant remains subject to reimprisonment for escape from such custody or is reimprisoned on revocation of parole." Both parties rely on the rationale advanced in *Hawkins*. Petitioner contends that a literal construction of the definition of prison custody justifies relief since temporary confinement pending revocation proceedings may not be considered as prison custody within the statutory definition. Contrariwise, respondent argues that petitioner's four-and-a-half-month confinement in state prison, which ultimately resulted in a thirteen-month extension of his parole term, "might more appropriately be characterized as punishment. (See Pen. Code, § 667.5, subds. (d) and (g).)" (*In re Hawkins, supra,* 103 Cal.App.3d at p. 625; cf. *People v. Martinez* (1980) 106 Cal.App.3d 524, 538 [165 Cal.Rptr. 160].) Moreover, the argument continues, the statutory provision including reimprisonment on parole revocation (subd. (d)) does not necessarily *exclude* parole suspension and attendant prison confinement from the statutory concept of "prison custody."

■ In construing the critical statutory language, we are guided by the following principles: "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so to effectuate the purpose of the law." (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) "In ascertaining the will of the Legislature, '[t]he court turns first to the words themselves for the answer. . . . If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. . . .'" (*Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 132-133 [142 Cal.Rptr. 325], accord *People v. Gaines, supra,* 112 Cal.App.3d 508, 517, as modified at 113 Cal.App.3d 358a.) Moreover, a penal statute is to be construed according to its fair import with the view to effect its objects and to promote justice (§ 4); where the statute is susceptible of two reasonable constructions, "a defendant is ordinarily entitled to that construction most favorable to him." (*Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 488 [134 Cal.Rptr. 630, 556 P.2d 1081].) Here, the statutory language clearly contemplates that for the specific enhancement purpose involved the status of prison custody is dependent upon the earlier occurrence of either official discharge or parole release "including any time during which defendant remains subject to reimprisonment for escape . . . or is reimprisoned on revocation of parole." (§ 667.5, subd. (d).) Here, as in *Hawkins*, petitioner neither escaped nor was he reimprisoned for parole revocation. (*In re Hawkins, supra,* 103 Cal.App.3d at p. 624.) ■ While in the abstract sense, any tem-

porary confinement in a prison setting following suspension of parole pending revocation proceedings (see §§ 3060 and 3063) may be characterized as punishment as *Hawkins* suggests (*id.*, at p. 625),[4] such temporary detention or confinement can ripen into reimprisonment for parole revocation only upon findings justifying revocation following a formal hearing consistent with federal constitutional due process requirements. (See *People* v. *Vickers* (1972) 8 Cal.3d 451, 456-460 [105 Cal.Rptr. 305, 503 P.2d 1313].) Nor does the commission of a parole violation uniformly require revocation and resulting reimprisonment (see *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 488 [33 L.Ed.2d 484, 498, 92 S.Ct. 2593]), as factually demonstrated herein. The punitive purpose of the enhancement provision is not served through a tortured interpretation of the related subdivisions equating *temporary custodial confinement with reimprisonment* following actual parole revocation, especially where none existed, as here. To hold otherwise in violation of basic principles of construction of a penal statute would neither advance the statutory objective nor promote the interest of justice.

We conclude that the Board lacked jurisdiction under sections 1170.2, subdivision (a) and 667.5 to impose an additional one-year term for the prior prison term served by defendant more than five years before commission of the current offenses for which he was sentenced. Accordingly, the Board is directed to recompute petitioner's sentence consistent with the view expressed herein. The order to show cause, having served its purpose, is now ordered discharged and the petition for habeas corpus denied.

Elkington, J., and Newsom, J., concurred.

On December 15, 1981, the opinion and judgment were modified to read as printed above.

---

[4]Since *Hawkins* was there concerned with the inherent distinction between the temporary detention for purpose of treatment as opposed to punishment, we do not find the suggested analysis helpful to our discussion whether a limited period of prerevocation prison confinement falls within the operative description exclusively provided to determine the pivotal status of prison custody.